Edward RONWIN, Plaintiff-Appellant,

v.

Richard W. SHAPIRO and Jane Doe Shapiro, Husband and Wife; Bruce Dickinson, a single man; and, The Board of Regents of the Universities and State Colleges of Arizona, Defendants-Appellees.

No. 80–5142.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1981.

Decided Oct. 1, 1981.

Rehearing Denied Nov. 9, 1981.

Edward Ronwin, Urbandale, Iowa, for plaintiff-appellant.

Michael Foudy, Tucson, Ariz., argued, for defendants-appellees; Hugh Holub, Tucson, Ariz., on brief.

Before FERGUSON and BOOCHEVER, Circuit Judges, and HATTER,* District Judge.

BOOCHEVER, Circuit Judge:

This is an appeal from the district court dismissal of Ronwin's claim for defamation. In 1976, the Arizona Supreme Court published an opinion in which it gave the following explanation for denying Ronwin admission to the Arizona Bar:

* The Honorable Terry J. Hatter, Jr., District Judge for the Central District of California, sitting by designation.

[T]here is significant expert testimony in the record to indicate that Ronwin has a "paranoid personality" which is characterized by hypersensitivity, rigidity, unwarranted suspicion, excessive self-importance and a tendency to blame others and ascribe evil motives to them.

*Application of Ronwin*, 113 Ariz. 357, 555 P.2d 315, 317 (1976), *cert. denied*, 430 U.S. 907, 97 S.Ct. 1178, 51 L.Ed.2d 583 (1977).

Dickinson, a student member of the *Arizona Law Review*, wrote a casenote on the *Ronwin* decision in which he quoted from the above passage. Note, *Admission to the Bar: Mental Fitness Requirements in Arizona*, 19 Arizona L. Rev. 672, 679 (1977). The review published Dickinson's casenote as part of a collection of student articles discussing significant Arizona appellate opinions from the previous year. *Arizona Appellate Decisions 1976–77*, 19 Arizona L. Rev. 485, 672–83 (1977). Ronwin demanded that Shapiro, who became editor-in-chief of the review after publication of the article, print either a retraction or an article that Ronwin had prepared. Ronwin's proposed article contended that the Arizona Supreme Court's opinion was the result of fraud, perjured testimony and conspiracy.

Ronwin then filed a defamation claim in the district court, based on diversity jurisdiction, against Dickinson, Shapiro, and the Board of Regents of the University of Arizona. The district court dismissed Ronwin's suit, ruling that the eleventh amendment barred any action against the defendants. We conclude that the Board of Regents is protected by eleventh amendment immunity, but that the individual defendants are not. Nevertheless, we conclude that under Arizona law the publication was privileged as a matter of law and affirm.

I. IMMUNITY OF THE BOARD OF REGENTS

 Because the trial court and we, on appeal, would lack jurisdiction over the de-

fendants if the claims are barred by Eleventh Amendment immunity, we must initially determine the validity of that defense. The eleventh amendment bars suits in federal courts by private citizens against a state. Where the state is in fact the real party in interest this bar cannot be circumvented by naming an individual state official or state agency as a nominal defendant. *See Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Because states are not "citizens" within the meaning of 28 U.S.C. 1332, a similar rule controls the determination of diversity jurisdiction when individual state officers or agencies are named in lieu of the state.[1]

■ Although a number of factors may be considered, a crucial question in determining whether the suit should be regarded as one against the state is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) (in concluding that a suit against the director of a state agency was in fact a suit against the state the court noted "[t]hese funds will obviously not be paid out of the pocket of petitioner Edelman."); *Highway Commission of Wyoming v. Utah Construction Co.*, 278 U.S. 194, 199, 49 S.Ct. 104, 105, 73 L.Ed. 262 (1929) (state highway commission is "alter ego of the State with no funds or ability to respond in damages.")

■ Arizona has enacted a comprehensive scheme of risk management that includes provisions for payment of judgments obtained against "the state and its departments, agencies, boards and commissions

...." Ariz.Rev.Stat.Ann. § 41–621 A.3 (Supp.1980). Although the Board of Regents exercises some independent powers not ordinarily accorded a state agency, the Arizona Supreme Court has held that if a judgment of money damages is secured against the Board of Regents "the state will have been successfully sued...." *Arizona Board of Regents v. Arizona York Refrigeration Co.*, 115 Ariz. 338, 565 P.2d 518, 520 (1977). There is no evidence that the Board, acting in its corporate capacity, could satisfy a libel judgment in any way other than by turning to the state of Arizona. Consequently we conclude that the Board of Regents is protected by the eleventh amendment, and further, that the Board is not a "citizen" within the meaning of 28 U.S.C. § 1332. Our decision is in accord with other opinions that have considered whether a state university is an arm of the state within the protection of the eleventh amendment.[2]

■ Ronwin contends that even if the Board of Regents is part of the state, Arizona has waived its eleventh amendment immunity from suit. Although in *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107, 109–13 (1963), Arizona abolished sovereign immunity, consent to be sued in state court does not necessarily imply consent to be sued in federal court. *Kennecott Copper Corp. v. Tax Commission*, 327 U.S. 573, 577–80, 66 S.Ct. 745, 746–48, 90 L.Ed. 862 (1946). In *Riggle v. State of California*, 577 F.2d 579, 585–86 (9th Cir. 1978), we found that California's statute waiving sovereign immunity did not constitute an express waiver of eleventh amendment immunity. A state's waiver of such immunity is to be narrowly construed, *Edel-*

1. For a thorough discussion of this issue see *Delong Corporation v. Oregon State Highway Comm'n.*, 233 F.Supp. 7, 10–17 (D.Or.1964), aff'd, 343 F.2d 911 (9th Cir.), cert. denied, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965). See also *George R. Whitten, Jr. Inc. v. State University Construction Fund*, 493 F.2d 177, 179–182 (1st Cir. 1974); Annot., 6 A.L.R.Fed. 615 (1971); Note, *A Practical View of the Eleventh Amendment—Lower Court Interpretations and the Supreme Court's Reaction*, 61 Georgetown L.J. 1473, 1485–87 (1973).

2. See e. g., *Korgich v. Regents of New Mexico School of Mines*, 582 F.2d 549, 551 (10th Cir. 1978); *Brennan v. University of Kansas*, 451 F.2d 1287, 1290 (10th Cir. 1971). But cf., *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347, 353 (6th Cir. 1975), cert. denied, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976) (unrestricted right to sue in "any court" construed as waiver where status of university's financial relationship with state unclear).

*man v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1360; *Great Northern Insurance Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944), and there is no indication in the *Stone* opinion that Arizona intended to consent to anything more than suit in its own courts.[3]

The District Court did not err in dismissing Ronwin's claim against the Board.

## II. IMMUNITY OF THE INDIVIDUAL DEFENDANTS

■ The Supreme Court has noted on numerous occasions that state officials cannot invoke state sovereign immunity under the eleventh amendment simply because they committed a tort in the course of their employment.

> [I]mmunity from suit is a high attribute of sovereignty—a prerogative of the State itself—which cannot be availed of by public agents when sued for their own torts. The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the State's citizens. To grant them such immunity would be to create a privileged class free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law.

*Hopkins v. Clemson College,* 221 U.S. 636, 642–643, 31 S.Ct. 654, 656, 55 L.Ed. 890 (1911). See *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) ("damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office."); *Ford Co. v. De-*

*partment of Treasury of Indiana,* 323 U.S. 459, 462, 65 S.Ct. 347, 349, 89 L.Ed. 389 (1945) ("Eleventh Amendment does not extend to wrongful individual action...."); *Great Northern Insurance Co. v. Read,* 322 U.S. 47, 50–51, 64 S.Ct. 873, 874–75, 88 L.Ed. 1121 (1944); *Johnson v. Lankford,* 245 U.S. 541, 545, 38 S.Ct. 203, 204, 62 L.Ed. 460 (1918).

As we read Ronwin's complaint he is bringing suit against Dickinson and Shapiro personally for the allegedly libelous remarks contained in the student note. From the evidence introduced in the district court we might conclude that if the *Arizona Law Review* as an entity had been sued it would be protected by eleventh amendment immunity.[4] See *Brennan v. University of Kansas,* 451 F.2d 1287, 1290 (10th Cir. 1971) (University Press of Kansas); *Dacey v. Florida Bar, Inc.,* 414 F.2d 195, 198 (5th Cir. 1969), *cert. denied,* 397 U.S. 909, 90 S.Ct. 906, 25 L.Ed.2d 89 (1970) (Flordia Bar Journal). Ronwin is suing the defendants individually, however; he is not suing the Law Review. Dickinson and Shapiro are not like the Board of Regents in that the state will have to pay the judgment if it is to be paid at all. Ronwin might attempt to satisfy any judgment from Dickinson and Shapiro personally. Funds from the State of Arizona are potentially involved in this case only if the State has voluntarily assumed the obligation of covering such risks under its indemnification program.[5] We agree with Professor Tribe that "a state should not be able to turn a purely intramural arrangement with its officers into an extension of sovereign immunity." L. Tribe, *American Constitutional Law* 132–33 n.22 (1978). In

---

**3.** In any event, because the Board is not a citizen, Arizona's purported consent to be sued does not create diversity jurisdiction. *Highway Commission of Wyoming v. Utah Construction Co.,* 278 U.S. 194, 199–200, 49 S.Ct. 104, 105–106, 73 L.Ed. 262 (1929).

**4.** Roger Henderson, Dean of the College of Law, stated in an affidavit that all of the law review's budget is paid by the state. The review earns approximately $10,000 annually which is paid into a general university fund. In addition, the Board of Regents holds the review's copyright.

**5.** Members of the Arizona Law Review can receive academic credit and can satisfy a graduation requirement by producing a note of suitable quality. Members of the editorial board also receive a stipend from the University. This evidence might be important to establish that Dickinson and Shapiro were "officers, agents and employees" of the State within the meaning of Ariz.Rev.Stat. § 41–621 A.3 (Supp. 1980), which provides indemnification to state employees for adverse personal judgments under certain circumstances. We assume, without deciding, that Dickinson and Shapiro would be compensated under this statute.

rejecting an eleventh amendment claim similar to this one, the court in *Palmer v. Penn-Ohio Road Materials, Inc.*, 470 F.Supp. 1199, 1203 (W.D.Pa.1979), noted the "incongruous" result that would follow if "the state, by creating a fund to compensate victims, has somehow extended immunity [to state employees] so as to deny payment to the class of intended beneficiaries." We conclude that Dickinson and Shapiro are not protected by eleventh amendment immunity because the claim against them does not constitute a suit against the State of Arizona.

## III. QUALIFIED PRIVILEGE OF INDIVIDUAL DEFENDANTS

Because the district court concluded that the entire action was barred by the eleventh amendment, it did not reach the question of privilege. Both the parties raised this issue in the district court, however, and have fully briefed it on appeal. The record is adequate to determine as a matter of law that Dickinson and Shapiro were privileged to publish the statements contained in the law review casenote.

Since at least 1796 in the English case of *Curry v. Walter*, 126 Eng.Rep. 1046 (C.P. 1796), the common law has recognized a privilege of fair report of judicial proceedings. The rule is expressed in the current Restatement of Torts as follows:

> § 611. *Report of Official Proceeding or Public Meeting.* The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

Restatement (Second) of Torts § 611 (1977).

Although the constitutional basis for this privilege is open to debate,[6] we are confi-

dent that an Arizona court would follow the Restatement in this instance. In the past Arizona Courts have relied on the Restatement to fashion appropriate rules in defamation cases. *Drummond v. Stahl*, 127 Ariz. 122, 618 P.2d 616, 619 (App.1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981) (Restatement (Second) of Torts § 587 providing for absolute privilege for defamatory material contained in pleadings); *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 560 P.2d 1216, 1222 (1977) (Restatement (Second) of Torts § 580B). Arizona courts have also recognized the absolute privilege accorded to judicial, legislative, and executive functions, *Ross v. Duke*, 116 Ariz. 298, 569 P.2d 240, 243 (App.1976), and have emphasized that publications "about matters of public interest and concern are to be accorded wide latitude . . . ." *Phoenix Newspapers, Inc. v. Church*, 103 Ariz. 582, 447 P.2d 840, 849 (1968), *cert. denied*, 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 759 (1976). Furthermore, this case presents none of the troublesome questions concerning republication of defamatory statements contained in documents filed with a court by private parties, or information contained in other government reports. *See Porter v. Guam Publications, Inc.*, 643 F.2d 615, 617–18 (9th Cir. 1981) (police bulletin). A published opinion by a state's highest court is at the core of the fair report privilege.

The privilege can be lost if the report of the judicial proceedings is inaccurate. In this case, the report contained in the law review casenote is not only accurate, the bulk of it is a verbatim republication of language from the Arizona Supreme Court's opinion.[7] As a result, the decision of the district court dismissing Ronwin's case against the individual defendants is

---

**6.** *See* Sowle, *Defamation and the First Amendment: The Case for a Constitutional Privilege of Fair Report*, 54 N.Y.U.L.Rev. 469, 521–45 (1979).

**7.** Ronwin has also objected to the use of the term "paranoia" in the article. The reference

occurs at footnote 65 of the article in the following context

> 65. The court was apparently taking this definition [of "paranoid personality"] from the *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (DSM–11) 42 (2d ed. 1968). Generally, characteristics of paranoia are life-long

affirmed. For the reasons stated in part I of this opinion, the dismissal of the Board of Regents is also affirmed.

AFFIRMED.

FERGUSON, Circuit Judge, concurring:

I fully concur in the disposition of the case, but disagree with the application of Eleventh Amendment doctrine. The discussion of immunity of state defendants is unnecessary to the result of the case and is not controlling. When an issue is rendered dictum by a dispositive issue, it should be excluded to avoid misplaced reliance in subsequent cases.

patterns often recognizable by the time of adolescence or earlier. *Id.* at 41. *See generally D. Shapiro, Neurotic Styles* 54–107 (1965). Note, *Admission to the Bar: Mental Fitness Requirements in Arizona*, 19 Ariz.L.Rev. 672, 679 n. 65 (1977). Even assuming there is a significant difference between "paranoid personality," the term used in the Supreme Court opinion, and the term "paranoia," we do not read the article as accusing Ronwin, or anyone else, of exhibiting signs of paranoia. The reference to "paranoia" is an obvious attempt to explain what the Arizona Supreme Court might have meant by "paranoid personality," and in fact, the remainder of the footnote discusses how the evidence was insubstantial to show that Ronwin suffered from paranoia. In short, the statement does not cause the report to be inaccurate.