**Leroy W. DEMERY, M.D.,**
**Plaintiff-Appellant,**

v.

**Lawrence KUPPERMAN, Deputy Attorney General of the State of California; Robert Rowland, Executive Secretary of the Board of Medical Quality Assurance and Joseph Cosentino, M.D., Medical Consultant to the Board of Medical Quality Assurance, Defendants-Appellees.**

No. 82–5710.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1983.

Decided June 22, 1984.

Leroy W. Demery, M.D., pro se.

Paul T. Hammerness, Asst. Atty. Gen., Los Angeles, Cal., for defendants-appellees.

Before HUG and REINHARDT, Circuit Judges, and PANNER,* District Judge.

REINHARDT, Circuit Judge:

Dr. Demery appeals the dismissal of his complaints against a California Deputy Attorney General and the Executive Secretary and the Chief Medical Consultant of the California Board of Medical Quality Assurance (BMQA). The complaint alleged that the defendants conspired to deprive Dr. Demery of his civil rights. The alleged conspiracy occurred in connection with administrative proceedings that resulted in the conditional revocation by the BMQA of Dr. Demery's license to practice medicine.

The district court dismissed both complaints on immunity grounds. Dismissal of the complaint against the Deputy Attorney General was based on the prosecutor's absolute immunity from civil rights damage suits challenging quasi-judicial actions. The complaint against the other two defendants was dismissed on eleventh amendment grounds. We affirm the dismissal of the complaint against the Deputy Attorney General but reverse the dismissal of the complaint against the other two defendants.

### FACTS

In 1977, the BMQA held hearings to determine whether to discipline Dr. Demery. Dr. Demery was accused of prescribing dangerous drugs without a prior good faith examination of the patient, a violation of

---

* Honorable Owen Murphy Panner, United States District Judge for the District of Oregon, sitting by designation.

California Business and Professional Code section 2399.5, Cal.Bus. & Prof.Code § 2399.5 (West 1974) (repealed 1980), and of prescribing controlled substances not in the regular practice of his profession, a violation of California Health and Safety Code section 11154, Cal.Health & Safety Code § 11154 (West 1975) (amended 1982). Dr. Demery claims that the charges against him were based on, and that the outcome of the BMQA hearings was influenced by, the perjured testimony of state agents. He claims that the perjured testimony was wilfully induced by Deputy Attorney General Kupperman.

After the hearing, the BMQA issued an order revoking Dr. Demery's medical license. The BMQA stayed its order and ordered that Dr. Demery be placed on probation for five years upon completing a six-month medical education course and passing an oral examination. Dr. Demery alleges that the BMQA subsequently waived the requirement that he complete the medical education course. He claims that, relying on the waiver, he allowed the time for appealing the BMQA's order to pass. He claims further that Deputy Attorney General Kupperman issued a verbal opinion revoking the waiver but failed to notify him of the revocation.

After the time for appealing the BMQA's order had passed, defendants Rowland and Cosentino proceeded to enforce the allegedly waived provisions of the BMQA's order. Dr. Demery was also subsequently convicted criminally of prescribing controlled substances without a prior good faith examination. He was sentenced to a period of incarceration.[1]

In 1981, Dr. Demery initiated this action under 42 U.S.C. § 1983 (1976). He alleged that, by inducing the state agents to testify falsely, defendant Kupperman deprived

him of his right to a fair hearing. He also alleged that defendant Kupperman, by revoking the waiver and failing to notify Dr. Demery of the revocation, and defendants Rowland and Cosentino, by wrongfully enforcing the waived provisions after the time for appeal had passed, conspired to deny him his right to an appeal and his right to practice medicine. Dr. Demery asked that the district court award him five million dollars in damages and order the defendants to "take whatever steps are necessary to have the [BMQA] vacate the administrative order relating to [Dr. Demery] and immediately restore his license to practice medicine."

The district court dismissed the complaint against defendant Kupperman on the ground that, because the complaint alleged acts Kupperman would have performed in his capacity as a prosecutor, Kupperman was "cloaked with absolute immunity from this type of suit." The court also dismissed the complaint against defendants Rowland and Cosentino, holding that, because California law required California to pay whatever damages the court awarded Dr. Demery, Dr. Demery's suit was barred by the eleventh amendment.[2] We affirm the dismissal of Dr. Demery's complaint against defendant Kupperman, but reverse the dismissal of the complaint against defendants Rowland and Cosentino.

## DISCUSSION

### I. *Defendant Kupperman*

Dr. Demery alleges that defendant Kupperman deprived him of his civil rights by (a) wilfully inducing certain investigative agents to commit perjury, and (b) failing to notify Dr. Demery that he was revoking the BMQA's waiver of certain requirements contained in the BMQA's order of

---

1. In his brief, Dr. Demery raises several challenges to his state court trial. Those issues are not properly before us. Dr. Demery filed a petition for writ of habeas corpus, but he did not appeal the district court's denial of his petition.

2. Dr. Demery's original complaint against Rowland and Cosentino was dismissed, with leave to amend, for failure to state with specificity the facts necessary to support his allegations. Dr. Demery then filed an *amended complaint*. References in this opinion to the complaint against Rowland and Cosentino are references to the amended complaint.

August 31, 1977. He seeks both damages and equitable relief.

■ With regard to the prayer for equitable relief, the complaint against Kupperman was properly dismissed. Dr. Demery does not contend, and it does not appear, that Deputy Attorneys General have any role whatever in the issuance or vacation of BMQA orders or in the revocation or restoration of medical licenses. *See* Cal. Const. art. V, § 13 (describing powers of Attorney General); Cal.Bus. & Prof.Code §§ 2000–22 (West 1984) (describing powers, duties, and structure of BMQA). The Attorney General simply acts as legal counsel to the board in judicial and administrative proceedings against it. *See* Cal.Bus. & Prof.Code § 2020 (West 1984).

■ With regard to the prayer for damages, Dr. Demery argues that, because the conduct that allegedly gave rise to the civil rights violations was administrative or investigative, not quasi-judicial, in nature, the district court erred in finding Kupperman absolutely immune. We agree with the district court that Kupperman was absolutely immune from this type of suit.

■ In enacting section 1983, Congress did not abrogate the common-law immunity that state officials traditionally enjoyed. *See Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The contours of prosecutors' immunity from section 1983 suits were outlined by the Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Imbler*, the Court held that prosecutors, both state and federal, are absolutely immune from section 1983 damage suits challenging conduct "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995. It expressly declined to "consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31,

96 S.Ct. at 994–95. The Court thus left standing the Ninth Circuit rule, enunciated in *Robichaud v. Ronan*, 351 F.2d 533 (9th Cir.1965), that a prosecutor is absolutely immune when he acts in a "quasi-judicial capacity," but that he enjoys only a qualified immunity "[i]f he acts in the role of a policeman." *Id.* at 536.

In *Imbler*, the Court recognized that the line between "administrative" or "investigative" acts and "quasi-judicial" acts is not always a clear one. It noted that some of the duties of a prosecutor in his role as an advocate for the state involve actions that may also be denominated "administrative" or "investigative." 424 U.S. at 430–31 & n. 33, 96 S.Ct. at 995 & n. 33. It declined, however, to lay down rules for determining which such duties would give rise to absolute prosecutorial immunity. We recently undertook that task in *Freeman ex rel. the Sanctuary v. Hittle*, 708 F.2d 442 (9th Cir.1983) (per curiam) and *Ybarra v. Rose*, 723 F.2d 675 (9th Cir.1984). In those cases, we held that that absolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were performed as part of the prosecutor's preparation of his case, even if they can be characterized as "investigative" or "administrative." *Freeman*, 708 F.2d at 443 ("investigative" acts); *Ybarra*, 723 F.2d at 679 ("administrative" acts).

In *Butz v. Economou*, the Supreme Court held that officials performing the functions of a prosecutor in administrative proceedings are entitled to the absolute prosecutorial immunity described in *Imbler*. *Butz*, 438 U.S. at 511–12, 98 S.Ct. at 2913–14. Although *Butz* involved federal administrative officials, we have held that the *Imbler* immunity also applies to state administrative officials who perform functions analogous to those of a prosecutor. *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981).

The first of Dr. Demery's claims against Kupperman is squarely controlled by the Supreme Court's holdings in *Imbler* and *Butz*, as refined by our holdings in *Free-*

*man* and *Ybarra.* Appellant contends that Kupperman induced witnesses to testify falsely. The alleged inducement occurred while Kupperman was conferring with the witnesses for the purpose of determining whether to bring charges against Dr. Demery. We think that conferring with potential witnesses for the purpose of determining whether to initiate proceedings is plainly a function "intimately associated with the judicial phase of the criminal process," *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995, and is therefore a quasi-judicial function "to which the reasons for absolute immunity apply with full force." *Id.* We doubt that such a function can be characterized as "administrative" or "investigative." *See Heidelberg v. Hammer,* 577 F.2d 429 (7th Cir.1978) (prosecutor absolutely immune from suit alleging that he falsified line-up reports); *Lee v. Willins,* 474 F.Supp. 970 (E.D.N.Y.) (prosecutor absolutely immune from suit alleging that he coerced false testimony), *aff'd,* 617 F.2d 320 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980). But even if it could be so characterized, Kupperman is immune under our holdings in *Freeman* and *Ybarra,* for conferring with potential witnesses regarding their knowledge of underlying events is plainly part of a prosecutor's preparation of his case. The fact that inducing false testimony is wrongful and indefensible is not relevant to the question whether immunity attaches. Underlying the doctrine of absolute immunity is a recognition that the advancement of broader public policies sometimes requires that concededly tortious conduct, no matter how reprehensible, go unremedied, at least by means of a civil action for damages.

■ Dr. Demery next complains of Kupperman's failure to notify him of the revocation of the waiver of the medical course requirement. Because that failure did not occur in connection with the *preparation* of the case, our holdings in *Freeman* and *Ybarra* do not in terms control. We believe, however, that the principles that underlie the doctrine of absolute prosecutorial immunity require a holding that prosecutors are absolutely immune from civil suits alleging wrongdoing with regard to post-litigation as well as pre-litigation handling of a case.

The necessity for absolute prosecutorial immunity was summarized by the Supreme Court in *Butz v. Economou,* 438 U.S. 478, 512–13, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978). First, prosecutors are, like judges and witnesses, particularly susceptible to harassment suits because "[t]he loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus." *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913. As the Court stated in *Imbler,* "a defendant will often transform his resentment at being prosecuted into the ascription of improper and malicious actions to the state's advocate." *Imbler,* 424 U.S. at 425, 96 S.Ct. at 992. Second, "the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Butz,* 438 U.S. at 512, 98 S.Ct. at 2914. Most important among these safeguards is the correctability of error on appeal and through collateral attack.

The first factor focuses on the prosecutor's status, not on the nature of the claim against him. This factor thus weighs just as heavily in favor of immunity for a prosecutor's handling of a case after trial as before and during trial. Because by hypothesis resentful defendants initiate suits irrationally or for purposes of harassment, they are just as likely to ascribe unconstitutional purposes to the prosecutor's post-trial acts as to his acts before and during trial.

The second factor also favors absolute prosecutorial immunity for a prosecutor's post-trial acts, for the "safeguards built into the judicial process" apply to those acts as well. For instance, if Dr. Demery had a right to be notified of a revocation of the waiver of the medical-course requirement, his failure to receive that notice would render the revocation ineffective. In addition, if he had a right to be notified of the revocation before his time for appeal

had run, it is likely that the time for appeal would be considered tolled under state law. Like allegations of misconduct during the trial preparation stage, allegations of misconduct in a prosecutor's post-trial handling of a case can generally be corrected without resort to a civil trial for damages. This claim, like the claim in *Ybarra,* is the type that "the Supreme Court, in its wisdom, wanted to prevent and recognized would be better handled by various post-trial remedies ...." *Ybarra,* 723 F.2d at 679–80 (quoting *Ybarra v. Rose,* No. 81–4922, slip op. at 9 (C.D.Cal. Dec. 30, 1981)).

We thus do not believe that a meaningful distinction can be drawn, for purposes of applying the immunity described in *Imbler,* between a prosecutor's post-trial handling of a case and his handling of a case before or during trial. In accordance with the Court's holding in *Butz* that this immunity applies equally in the context of administrative proceedings, we hold that defendant Kupperman is absolutely immune from the claim for damages based on the allegation that he wrongfully failed to notify Dr. Demery of the revocation of the waiver of the medical-course requirement.

## II. *Defendants Rowland and Cosentino*

Dr. Demery claims that, by enforcing the waived provisions of the BMQA's order, defendants Rowland and Cosentino denied him his right to an appeal and his right to practice medicine. He seeks damages and an order requiring the defendants to take steps to vacate the BMQA's order and restore his license to practice medicine.

The district court dismissed the complaint against Rowland and Cosentino on eleventh amendment grounds. It found that, because California law requires California to pay damage awards levied against California officials for acts performed in the course of their official duties, the relevant precedents required dismissal. We reverse.

### A. *The General Rules*

The eleventh amendment provides that [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI. The amendment has been read as a constitutionalization of the principle of state sovereign immunity. *See Pennhurst State School & Hospital v. Halderman (Pennhurst II),* — U.S. —, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Accordingly, the amendment has, despite its limited terms and its unambiguous language, been held to bar suits against states brought by its own citizens. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

▉ While it is now clear that the eleventh amendment bars from the federal courts most[3] suits against states that have not consented to being sued, determining whether a suit is against a state is not always a simple task. The amendment, of course, generally bars suits in which a state is the named defendant. *See Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 846–59, 6 L.Ed. 204 (1824). But the amendment also bars some suits in which the named defendant is a state official. The test for determining which suits against state officials are treated as suits against the state for eleventh amendment purposes has been variously articulated: "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter," *Hawaii v. Gordon,* 373

---

**3.** The eleventh amendment does not bar suits against a state brought by the United States, *Employees of the Department of Public Health and Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 289, 93 S.Ct. 1614, 1620, 36 L.Ed.2d 251 (1973), or by a sister state, *United States v. Mississippi,* 380 U.S. 128, 140–41, 85 S.Ct. 808, 814–15, 13 L.Ed.2d 717 (1965). Nor does the amendment bar suits against states by individuals when Congress has overridden the states' sovereign immunity through legislation enforcing section 5 of the fourteenth amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). *See also* the *Ex parte Young* exception, discussed *infra.*

U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (*per curiam*); "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest,'" *Pennhurst II*, 104 S.Ct. at 908 (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)); "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted).

 Under those general rules, the damage claim against Rowland and Cosentino plainly emerges as one *not* against the state. Section 1983, under which Demery brings his suit against those individuals, confers on Dr. Demery a cause of action at law against "[e]very person" who, under color of state law, subjects him to "the deprivation of any rights, privileges, or immunities secured [him] by the Constitution and laws." 42 U.S.C. § 1983 (1976). As the Supreme Court has emphasized, a state official who violates federal law "is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct." *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (quoting *Ex parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908)) (emphasis supplied in *Scheuer*). Accordingly, the Court has distinguished section 1983 claims from claims "seeking damages from the public treasury," *Scheuer*, 416 U.S. at 238, 94 S.Ct. at 1687, and has expressly held that damage actions brought under section 1983 "seeking to impose individual and personal liability on" state officials "are not barred by the Eleventh Amendment." *Id.* Because Dr. Dem-

ery plainly seeks damages from Rowland and Cosentino personally, his action is not barred by the eleventh amendment.

### B. Ex Parte Young *and Prospective Injunctive Relief*

 An important exception to the general rules mentioned above has long been recognized. In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court made it clear that a suit against a state official seeking injunctive relief from unconstitutional state action is not a suit against the state, regardless of whether the state is the real party in interest. Although the Court has since ruled that the *Ex parte Young* exception permits only suits for prospective injunctive relief, *see Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the *Ex parte Young* principle, as so limited, has repeatedly been reaffirmed. *See, e.g., id.* at 664, 94 S.Ct. at 1356; *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979).

 Although Dr. Demery's action for equitable relief against Rowland and Cosentino would be a suit against California under the general rules, it plainly falls within the *Ex parte Young* exception. Because he alleges unconstitutional state action and seeks only prospective injunctive relief, his equitable claim is not barred by the eleventh amendment. The district court's dismissal of the claim on eleventh amendment grounds was erroneous.[4]

### C. Edelman v. Jordan *and State Indemnification*

Defendants assert that they are in a different position from most section 1983 defendants because California has enacted a law requiring the state to pay damage awards levied against California officials for acts performed in the course of their official duties. Cal.Gov't Code § 825 (West

4. We express no opinion regarding whether either Rowland or Cosentino possesses any power to confer the relief Dr. Demery seeks. Nor do we consider whether injunctions of the type Dr. Demery seeks are available under section 1983.

Because the district court considered neither of those questions, we remand the claim for equitable relief to the district court for initial consideration of all appropriate issues other than the eleventh amendment question.

1980).[5] Defendants argue that because any damages Dr. Demery is awarded must, under California's law, be paid from public funds in the state treasury, Dr. Demery's claim is a suit against California under the rule that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). That argument lacks merit.

Defendants' argument is foreclosed by our post-*Edelman* holding in *Ronwin v. Shapiro*, 657 F.2d 1071 (9th Cir.1981). In that case, student members of the *Arizona Law Review* were sued for publishing allegedly libelous material. We held that the defendants were not immune even though Arizona had a law that, we assumed, would have required the state to indemnify them if they lost. 657 F.2d at 1074 n. 5. The Arizona law, we said, was " 'a purely intramural arrangement' " between a state and its officers that a state should not be able to turn into an extension of sovereign immunity. 657 F.2d at 1074 (quoting L. Tribe, *American Constitutional Law*, 133

n. 22 (1978)). We noted the incongruity that would result if a state, " 'by creating a fund to compensate victims, has somehow extended immunity [to state employees] so as to deny payment to the class of intended beneficiaries.' " *Id.* at 1075 (quoting *Palmer v. Penn-Ohio Road Materials, Inc.*, 470 F.Supp. 1199, 1203 (W.D.Pa. 1979)).[6]

Our holding applies as strongly in the instant case. Indeed, a contrary holding would be even more anomalous when, as here, federal rights are at stake[7]—a state would then have the power effectively to prevent vindication of federal rights in federal court. As the Court stated in *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908), and repeated in *Scheuer*, 416 U.S. at 237, 94 S.Ct. at 1687, "[a] state has no power to impart to [state officers] any immunity from responsibility to the supreme authority of the United States." We are thus unable to accept the proposition that a state may extend sovereign immunity to state officials merely by enacting a law assuming those officials' debts. *See also Rochester Methodist Hospital v. Travelers*

---

**5.** California Government Code section 825 reads in relevant part as follows:

> If an employee or former employee of a public entity request [sic] the public entity to defend him against any claim or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity and such request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.
>
> If the public entity conducts the defense of an employee or former employee against any claim or action with his reasonable good faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed; but, where the public entity conducted such defense pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise or settlement until it is established that the injury arose out of an act or omission

occurring within the scope of his employment as an employee of the public entity, the public entity is required to pay the judgment, compromise or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his employment as an employee of the public entity.

> Nothing in this section authorizes a public entity to pay such part of a claim or judgment as is for punitive or exemplary damages.

Cal.Gov't Code § 825 (West 1980). We assume for purposes of this opinion that Rowland and Cosentino would be indemnified by California.

**6.** We reject the statement in the concurring opinion in *Ronwin* that the language we rely on is dictum. In any event, we believe that the rule the majority states is correct and apply it here.

**7.** Indeed, it has been persuasively argued that the framers of the eleventh amendment did not intend to shield the states from suits based on federal questions; they rather meant only to repeal that part of article III that extended the judicial power to "Controversies ... between a State and Citizens of another State." U.S. Const. Art. III, § 2, cl. 1. *See* Gibbons, *The Eleventh Amendment and State Sovereign Immunity: A Reinterpretation*, 83 Colum.L.Rev. 1889 (1983).

*Insurance Co.,* 728 F.2d 1006 (8th Cir. 1984); *Downing v. Williams,* 624 F.2d 612 (5th Cir.1980), *vacated on other grounds,* 645 F.2d 1226 (5th Cir.1981).

Our holding is fully consistent with *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Although the *Edelman* language defendants rely on, *see supra* at 2664, superficially supports defendants' argument, the rest of Justice Rehnquist's opinion makes it clear that the Court did not intend that a state may extend eleventh amendment immunity to its officials simply by enacting a statute by which it undertakes to indemnify officials for damage awards assessed against them.

In *Edelman,* the defendants were state officials responsible for administering federal-state disability benefits. The complaint charged that the state officials had violated federal regulations and the fourteenth amendment to the United States Constitution. Plaintiffs asked the district court to issue an injunction ordering the state officials to release all benefits wrongfully withheld. The complaint thus prayed that the federal court order the state officials to disburse state funds they were responsible for administering. In holding that the eleventh amendment barred the federal courts from granting such relief, the Court laid great stress on the federalism concerns underlying the eleventh amendment, concerns that it felt would be subverted if federal courts could "order [state officials] to use state funds to make reparations for the past." 415 U.S. at 665, 94 S.Ct. at 1357 (quoting *Rothstein v. Wyman,* 467 F.2d 226, 237 (2d Cir.1972), *cert. denied,* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973)). *See also Pennhurst II,* 104 S.Ct. at 915–17 (stressing the eleventh amendment's basis in federalism).

The federalism concerns that influenced the Court's holding in *Edelman* are entirely absent from this case. When, as here, the state's obligation to pay damages derives not from the nature of plaintiff's claim, but from an entirely collateral, voluntary undertaking on the part of the state, the federal court is in no way exerting power over the state or the state's treasury. If plaintiff prevails on the merits, the court will not be ordering the state to do anything; it will only be ordering the *official* to pay damages. If the state official desires indemnification under the state statute, he must bring suit in a state court. *See Pennhurst II.* And if plaintiff prevails in his suit against the officials, any suit by him seeking to enforce his award against the state in federal court would be barred by the eleventh amendment. *See Glosen v. Barnes,* 724 F.2d 1418 (9th Cir.1984).

Because the problems the *Edelman* Court faced are absent here, and because a contrary rule would produce considerable and unacceptable incongruities, *see supra,* we read the *Edelman* language defendants rely on as simply another articulation of the general rules mentioned above. That the Court was restating, not modifying, these general rules is demonstrated by its citation of the *Ford Motor* test immediately before using the language defendants rely on. In fact, in a subsequent opinion, Justice Rehnquist, again writing for the Court, described the holding in *Edelman* expressly as a "reaffirm[ation] [of] the rule that had evolved in ... earlier [Supreme Court] cases." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979). If, as the Court has maintained, *Edelman* does not depart from prior law on this point, the language cited by defendants must be read in light of the following implicit qualification: the eleventh amendment bars suits that seek to impose a liability that, *because of the nature of the claim asserted,* "must be paid from public funds in the state treasury."

Here, the state's obligation to pay does not derive from the nature of plaintiff's claim. Defendants Rowland and Cosentino are being sued for damages for which, as *Scheuer* makes clear, the United States has made them individually liable. The suit is not essentially one against the state: California's law does not, and cannot, change the nature of the federal claim. California's obligation to pay the damages awarded against its employees derives from an

entirely collateral and voluntary undertaking on the part of the state. The *Edelman* rule thus does not apply.

Defendants also cite *Rutledge v. Arizona Board of Regents*, 660 F.2d 1345 (9th Cir.1981), to support their eleventh amendment argument. In *Rutledge*, we held that the eleventh amendment did not bar a federal civil rights suit against state officials. In so holding, we noted that "[n]either the district court nor [the state official] have pointed to any law of the State of Arizona that would require that any damages, for which [the state official] would be liable ..., be paid from state funds." 660 F.2d at 1350. While that statement may suggest that state payment of damages is necessary for eleventh amendment immunity to apply, it does not indicate that such payment is sufficient to give rise to eleventh amendment immunity. Because the state was not required to pay the damages, it was not necessary for us to consider in *Rutledge* whether the defendants would have been entitled to eleventh amendment immunity had Arizona been required to indemnify the state officials. We considered and rejected that argument in *Ronwin*. *Ronwin*, not the negative inference defendants invite us to draw from *Rutledge*, states the rule in this Circuit.

### D. Pennhurst II

▆▆▆ The Supreme Court's recent opinion in *Pennhurst II, supra*, also con-

tains language that, if interpreted literally, would compel a holding that Dr. Demery's claim is barred by the eleventh amendment. However, read in context, it is clear that that language too is consistent with our holding.[8]

In *Pennhurst II*, the Court read *Edelman v. Jordan, supra*, as holding that the eleventh amendment bars some actions that are not suits against states. *See Pennhurst II*, 104 S.Ct. at 909. Later in the opinion, the Court described the suits that, as it interpreted *Edelman*, are barred from federal court by the eleventh amendment even though they are not suits against the state: "Under *Edelman v. Jordan, supra*, a suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court." *Pennhurst II*, 104 S.Ct. at 920. Under that test, if the language were read literally, Dr. Demery's claim would be barred by the eleventh amendment even though it is not a claim against California. The problem is that, if the *Pennhurst II* language were read so broadly, the eleventh amendment would bar *all* section 1983 damage suits from the federal courts, for all such suits are against state officers and are for "retroactive monetary relief."

If that had been the intended holding in *Pennhurst II, Scheuer v. Rhodes, supra*,

---

8. The concurring opinion suggests that it is unnecessary for us to discuss *Pennhurst II's* interpretation of *Edelman* because *Pennhurst II* was not relied upon by the parties. However, the eleventh amendment is a limitation on federal subject-matter jurisdiction. Even when neither party has raised an objection to a federal court's subject-matter jurisdiction, the court has an obligation to consider the issue *sua sponte*, and to consider it fully. *Chicago, Burlington and Quincy Railway Co. v. Willard*, 220 U.S. 413, 418–22, 31 S.Ct. 460, 461–63, 55 L.Ed. 521 (1981). *A fortiori*, when state officials raise an objection that eleventh amendment immunity applies, a federal court must consider all relevant arguments whether or not specifically advanced by the state officials. Because the *Pennhurst II* language would, if read literally, support appellees' claim that they are entitled to eleventh amendment immunity, we are obligated to consider that language here.

The concurring opinion also appears to dismiss the Supreme Court's language as dictum. We agree with our concurring colleague that the precise holding in *Pennhurst II* is inapplicable to this case. However, we believe it would be inappropriate to ignore entirely the Supreme Court's most recent pronouncements on the eleventh amendment even if they are dicta.

In any event, it is clear that our concurring colleague agrees with our holding that, despite the *Pennhurst II* language that is "bothersome" if interpreted literally (*see* concurring opinion at 2669), the eleventh amendment does not bar a suit seeking damages against a state official personally. Any such conclusion must, in our view, necessarily include a determination that nothing in *Pennhurst II* requires a contrary result.

would in effect have been overruled and section 1983 would in effect have been rendered ineffective. We are very reluctant to read *Pennhurst II* as having accomplished so significant a reversal in such an important area of our jurisprudence without having discussed either *Scheuer v. Rhodes* or section 1983. Because an interpretation of the *Pennhurst II* language that is consistent with both *Scheuer v. Rhodes* and decades of section 1983 jurisprudence is available, we decline to interpret *Pennhurst II* as having effectuated such a radical change in the established law of civil rights.

■ In *Pennhurst II*, the Court first acknowledged that "[w]hen a suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." 104 S.Ct. at 908. Generally, when a state official is sued in his official capacity the suit is one against the state and therefore barred by the eleventh amendment. As the Court recognized in *Pennhurst II*, however, there is an important exception to this general rule: since *Ex parte Young* was decided, it has been established that "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst II*, 104 S.Ct. at 909.

■ As we have already noted, the plaintiffs in *Edelman* were suing the state officials in their official capacities. Because they were challenging the constitutionality of the state officials' action, their case was, under the theory of *Ex parte Young*, not against the state. The Court held, however, that the eleventh amendment nevertheless barred the suit because it was a suit for retroactive monetary relief. We think it clear from the *Edelman* opinion that the Supreme Court held simply that the *Ex parte Young* exception does not extend to suits for retroactive monetary relief; that is, suits seeking retroac-

tive monetary relief from the state are barred by the eleventh amendment even if the claim is a constitutional one.

We do not think that *Edelman* can plausibly be read to change the general rule that suits seeking damages from state officials in their individual capacities are not barred by the eleventh amendment. In *Edelman*, the Court first discussed the general rules regarding when a suit against a state officer is a suit against the state. After determining that the suit was one against the state under those general rules, the Court proceeded to determine whether the federal court nevertheless had jurisdiction under the *Ex parte Young* rule. It concluded that the suit was barred by the eleventh amendment because, unlike the claim in *Ex parte Young*, it was a suit for retroactive monetary relief as opposed to prospective injunctive relief. The Court's methodology in *Edelman* makes it clear that the Court was only determining the limits of the *Ex parte Young* exception. Had that not been its intention, there would have been no reason for it first to determine whether the suit was one against the state under the general rule.

Because such a reading better comports with the Court's opinion in *Edelman*, and because there is no indication in *Pennhurst II* that the Court intended to overrule *Scheuer v. Rhodes* or render section 1983 ineffective, we read the Court's statement in *Pennhurst II* that "[u]nder *Edelman v. Jordan* ... a suit against state officials for retroactive monetary relief ... must be brought in state court," 104 S.Ct. at 920, as limited to suits against state officials that are actually suits against the state itself under the general rules we discussed earlier. Neither *Edelman* nor *Pennhurst II* changes the well-settled rule that the eleventh amendment does not bar suits seeking damages for violation of federal law from state officials personally.[9]

---

9. We of course need not consider what effect, if any, *Pennhurst II* has on the availability of a federal forum for suits seeking damages for violation of state law from state officials personally. *Cf. Pennhurst II*, 104 S.Ct. at 917 ("[A]

federal suit against state officials on the basis of state law contravenes the Eleventh Amendment *when ... the relief sought and ordered has an impact directly on the State itself.*" (emphasis added)).

As we noted above, this suit is, under the general rules, a suit against Rowland and Cosentino in their individual capacities. The *Pennhurst II* language is therefore inapposite. Like all section 1983 suits seeking damages from state officials personally, this case is not barred from the federal courts by the eleventh amendment.[10]

## CONCLUSION

The damage claim against defendant Kupperman was correctly dismissed on the basis of absolute prosecutorial immunity. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The prayer for equitable relief against Kupperman was also properly dismissed. He has no power to bring about the result Dr. Demery seeks. However, the claims asserted against the Executive Secretary and Medical Consultant to the BMQA are not barred by the eleventh amendment. Accordingly, we reverse the dismissal of the claims against defendants Rowland and Cosentino and remand the case to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

PANNER, District Judge, Concurring:

I concur in all but part II.D. of this opinion. That part, to my mind, goes beyond what is necessary. The striking differences between *Pennhurst II* and this case make it unwise to engage in a detailed discussion of the relationship between *Pennhurst II, Edelman,* and *Scheuer.*

*Pennhurst II* holds that the eleventh amendment bars federal courts from compelling state officials to conform their conduct to state law. In that case, state officials were sued only in their official capacities. Here, by contrast, Rowland and Cosentino are sued in their individual capacities. In *Pennhurst II,* the Supreme Court considered a claim based on state law. Here, on the other hand, we consider a federal constitutional claim based on a federal statute, 42 U.S.C. § 1983.

The majority is concerned about the following statement from *Pennhurst II:* "Under *Edelman v. Jordan, supra,* a suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court." 104 S.Ct. at 920. The panel concedes that language is bothersome only "if interpreted literally . . . ." *Supra,* at 2666.

The Court specifically reiterated that a suit challenging the constitutionality of a state official's action is not one against the state for eleventh amendment purposes. 104 S.Ct. at 909. Obviously, the quoted language must be interpreted in light of the issues that were involved. This interpretation was neither briefed nor argued. "Clarifying" *Pennhurst II* should be done only where necessary.

---

**10.** That is not to say that every time a state official violates federal law he is subject to suit for damages in federal court. As we noted in Section I of this opinion, Congress did not, in enacting section 1983, repeal the common-law immunities that executive, legislative, and judicial officers had traditionally enjoyed. *See Scheuer v. Rhodes,* 416 U.S. 232, 238–39, 94 S.Ct. 1683, 1687–88, 40 L.Ed.2d 90 (1974); *Wood v. Strickland,* 420 U.S. 308, 320–22, 95 S.Ct. 992, 999–1001, 43 L.Ed.2d 214 (1975); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Because defendants Rowland and Cosentino do not argue on this appeal that they are entitled to enjoy any common-law immunities, we do not here consider whether any such immunity would shield them from the type of suit Dr. Demery brings.