JUSTICE WEBER
dissents as follows:
In the first issue of the majority opinion, the opinion holds that the County Attorney was not acting within his prosecutorial capacity when he failed to advise the county jail of information allegedly indicating Richard’s suicidal tendency. The majority held that the County Attorney was acting within his administrative capacity and reversed the summary judgment in favor of the County. I dissent from that conclusion and that holding.
The District Court ordered a psychological evaluation by Warm Springs State Hospital to determine whether the defendant had the ability to stand trial. As stated in the report from the State Hospital, Mr. Smith was admitted to the State Hospital on a court order for a psychological \ psychiatric evaluation to determine if Mr. Smith suffers from a mental disease or defect; an opinion as to his capacity to understand the proceedings against him and to assist in his defense; and an opinion as to his capacity to have acted purposely or knowingly during the robbery on February 13,1989, such is an essential element of the robbery offense with which he is charged. The State Hospital report was signed by a psychologist and psychiatrist. The report was 14 pages in length, single spaced. While the details of the report are not before us as a factual issue, the report in substance concluded that the defendant appeared competent to understand the charges against him and to assist in his own defense if he chooses to do so; that his lack of cooperation would be a conscious decision on his part rather than the result of mental illness; and that he appeared capable of acting with knowledge and purpose at the time of the alleged crime. As pointed out in the majority opinion, the plaintiff’s claims focused on the failure of the County Attorney to advise the County Jail of the allegedly life saving information in the Report.
In considering the analysis of this issue, we will follow the order of authority set forth in the majority opinion. The majority opinion points out that as quasi judicial officers, prosecutors enjoy immunity from civil liability for conduct within the scope of their duties, allowing the unfettered enforcement of criminal laws. The majority opinion further quotes from Dept. of Justice, 560 P.2d at 1330, *16 pointing out that we consistently have stated that “[w]hen a prosecutor acts within the scope of his duties by filing and maintaining criminal charges he is absolutely immune from civil liability, regardless of negligence or lack of probable cause.” In a similar manner, reference is made to Imbler, 424 U.S. at 430-31, 96 S.Ct. at 994-96, where the Supreme Court held a prosecutor to be immune from civil liability in initiating a prosecution and presenting the state’s case, conduct it deemed “intimately associated with the judicial phase of the criminal process.”
In analyzing whether the failure of the County Attorney is related to the maintaining of criminal charges, the majority states:
The asserted omission by the County Attorney, however, did not relate to information provided to facilitate Richard’s prosecution, namely, whether Richard suffered from a mental disease or defect and had the capacity to stand trial and form the requisite mental state. It involved information purportedly indicating Richard’s severe depression and suicidal tendency, information extraneous to Richard’s prosecution.
While we do not have the details of the state report before us, I conclude the majority is incorrect when it suggests that the omission by the County Attorney did not relate to information provided to facilitate the deceased’s prosecution. As previously indicated, the purpose of the extensive report from the State Hospital was to determine if Mr. Smith suffered from a mental disease or defect, whether he had the capacity to understand the proceedings against him and to assist in his defense, and to determine if he had the capacity to have acted purposely on the date of the offense. It is clear that the purpose of the report is to determine if criminal charges could be maintained against the deceased. Clearly the County Attorney was required to consider this information in order to determine whether or not to continue the prosecution. I don’t see how any of the information could be considered extraneous to the prosecution. I conclude that interpreting the report evaluation clearly was within the scope of the duties of a prosecutor ¡and was “intimately associated with the judicial phase of the criminal process.” If any aspect of the report demonstrated an unfitness for trial, the County Attorney could not prosecute. “A determination by the county attorney to bring an action is discretionary, and is his duty -under the law.” Ronek v. Gallatin County (1987), 227 Mont. 514, 518, 740 P.2d 1115; cert denied 484 U.S. 962, 108 S.Ct. 1226, 99 L.Ed.2d 426.
*17 In order to make the determination as to the continuance of the prosecution, the County Attorney had to assess the report in front of him. Interpretation of the report clearly was related to “maintaining” the criminal action. It is not related to the daily running of a county attorney’s office. It is impossible to divorce interpretation of this report from the attendant notification of jail personnel.
Determining whether the defendant has a mental disease or defect is an investigative function associated with the charge in question. “Investigative functions carried out pursuant to the preparation of a prosecutor’s case ... enjoy absolute immunity.” Freeman ex rel. the Sanctuary v. Hittle (9th Cir. 1983), 708 F.2d 442, 443. “Absolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were performed as part of the prosecutor’s preparation of his case, even if they can be characterized as ‘investigative’ or ‘administrative.’ ” Demery v. Kupperman (9th Cir. 1984), 735 F.2d 1139, 1143, cert. denied, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803. (Emphasis added.) This consideration reveals the error in the special concurrence’s assessment of the dissent. I do not negate the functional analysis provided by the concurrence; I simply disagree that the function in question was “administrative.”
The majority opinion concludes that the prosecutorial immunity should be limited to conduct inherent in a comity attorney’s prosecutorial function. I agree with that standard, except that I conclude that the functions here involved were clearly inherent in that prosecutorial function. The majority opinion concludes that the failure to notify of alleged life saving information is not integral to the prosecutorial function but rather is part of the administrative function of the County Attorney’s office.
The majority opinion further refers to Buckley v. Fitzsimmons (1993), 113 S.Ct. 2606, 2615-18, 125 L.Ed.2d 209, where the United States Supreme Court concluded that a prosecutor’s conduct having a function closely associated with the judicial phase of the criminal process was entitled to absolute immunity. This demonstrates my disagreement with the majority opinion. The majority somehow has arrived at the conclusion that it is possible to choose some knowledge gained from the report and call action based on knowledge administrative in nature. Under Buckley, the prosecutor’s conduct in this case had a function closely associated with the judicial phase of the criminal process, namely to determine whether or not Richard was able to properly stand trial. Clearly the interpretation of the report was connected to the prosecutor’s role in the judicial proceeding.
*18 I conclude that the consideration, interpretation, and attendant actions emanating from that lengthy: report were clearly within the scope of the duties of the County Attorney and that the contentious actions or omissions were intimately associated with the judicial phase of the criminal process. I further conclude that interpreting the report is “intimately connected” to the duties of the prosecutor. As a result I am unable to see how the alleged omission can be classed as “administrative.” ;
I would affirm the District Court’s holding that the County Attorney’s conduct was prosecutorial in nature because it occurred in the course of the filing and maintaining of criminal charges.
I would therefore affirm the summary judgment in favor of the County. I would further join in the majority opinion’s affirmance of the summary judgment in favor of the State and also the affirmance of the District Court’s refusal to allow amendment of the complaint.