**Joseph GUZMAN and Dolores Guzman, Plaintiffs,**

v.

**J.M. VAN DEMARK, S.A. Wood, Department of California Highway Patrol, and the State of California, Defendants.**

**Civ. No. 86–2250 RG(Gx).**

United States District Court, C.D. California.

Jan. 14, 1987.

---

David R. Worley, Nordman, Cormany, Hair and Compton, Oxnard, Cal., for plaintiffs.

John K. Van De Kamp, Atty. Gen., of Cal., Marsha S. Miller, Deputy Atty. Gen., Los Angeles, Cal., for defendants State of California (also erroneously named and served as the California Highway Patrol) J.M. Van Demark and S.A. Wood.

## ORDER

GADBOIS, District Judge.

On August 24, 1984, plaintiff Joseph Guzman ("Guzman") was arrested for suspicion of drunk driving. Incident to the arrest, an altercation ensued between Guzman and his wife, and defendants J.M. Van Demark and S.A. Wood, officers of the Department of California Highway Patrol ("CHP"). Plaintiffs seek monetary relief under 42 U.S.C. §§ 1983 and 1985, and under various California laws for injuries allegedly caused by the tortious conduct of the CHP officers. The several defendants, including the State of California ("the State") and the CHP, have moved to dismiss the action on the grounds of sovereign immunity and the running of the appropriate statutes of limitations. For the reasons discussed below, the motion is granted in part and denied in part.

## FACTS

The complaint alleges that on August 24, 1984, the Guzmans were driving on U.S. Highway 101 from Oxnard, California, to Los Angeles County Hospital to visit Guzman's father who was a patient there. Guzman was driving when he and his wife were stopped and detained by officers Van Demark and Wood. As a result of this detention, Guzman was arrested for driving while intoxicated (Cal.Veh.Code § 23152). While arresting him, the CHP officers allegedly used excessive and unreasonable force against both plaintiffs, but particularly with respect to Guzman, who was also charged with resisting arrest and battery upon a peace officer (Cal.Penal Code §§ 148 and 243). This use of force allegedly injured the plaintiffs; Guzman was apparently injured somewhat severely.

Based on these incidents, plaintiffs sued the CHP officers under 42 U.S.C. § 1983 for depriving them of their civil rights (Count One of the complaint). They also assert state causes of action for battery, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress (Counts Three through

Six, respectively) against the officers, the CHP and the State.

In Count Two, plaintiffs claim that the officers conspired to interfere with the Guzmans' civil rights in violation of 42 U.S.C. § 1985. The thrust of this allegation is that these defendants suppressed, concealed and altered evidence in the underlying state criminal action against Guzman. Plaintiffs are presumably attempting to state a cause of action under section 1985(2) which proscribes various forms of obstruction of justice in state and federal courts.

Finally, the Guzmans sued the CHP officers for malicious prosecution under California law (Count Seven). Plaintiffs allege that the officers filed the three criminal charges against Guzman—which were dropped on the date set for trial—in bad faith and without probable cause. Plaintiffs claim that the charges were pretextual and filed solely for the purpose of justifying the excessive force used in effectuating Guzman's arrest.

## DISCUSSION

### I. *SOVEREIGN IMMUNITY*

#### A. *The State and the CHP*

■ It is beyond question that this court lacks the power to adjudicate plaintiffs' claims against the State and its agency, the CHP. Both of these defendants are immune in this action under the eleventh amendment to the United States Constitution. Plaintiffs' failure to oppose these defendants' motion evidences the inevitability of this conclusion.[1]

■ The eleventh amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Guzmans are California citizens, yet it is well

settled that the eleventh amendment also extends a state's sovereign immunity to federal court cases brought by its own citizens. The Supreme Court has "consistently held that an unconsenting State is immune from suits brought in the federal courts by her own citizens...." *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662, 672 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, 845 (1890). Furthermore, a state's eleventh amendment immunity extends to federal court cases brought against the state's agencies. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, the CHP's immunity is coextensive with the State's immunity.

■ Because plaintiffs have named the State and the CHP as defendants and seek a damage award from the State's treasury, their action against these defendants is barred by the eleventh amendment unless the State has waived its immunity. *State of Missouri v. Fiske*, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933); *Riggle v. State of California*, 577 F.2d 579, 584 (9th Cir. 1978). Such waiver will not be inferred lightly. *Riggle*, 577 F.2d at 582. It will only be found to exist when stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360, 39 L.Ed.2d at 678 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742, 751 (1909)).

■ As the plaintiffs have not asserted that the State has waived its sovereign immunity, it is difficult to imagine upon what basis such waiver might exist. The only conceivable basis for finding waiver in this case would be the State's consent to be sued under the California Tort Claims Act (Cal.Govt.Code §§ 810 *et seq.*). However, this act does not benefit the Guzmans because it waives the state's *state* sovereign immunity not to be sued in *state* court. It

---

1. While the plaintiffs have not addressed this issue, the court does because it affects the court's subject matter jurisdiction. *Demery v.*

*Kupperman*, 735 F.2d 1139, 1149 n. 8 (9th Cir. 1984), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985).

has long been recognized that a state may waive its state sovereign immunity without relinquishing it eleventh amendment immunity. *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 577–80, 66 S.Ct. 745, 746–48, 90 L.Ed. 862, 866–67 (1946); *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 876–77, 88 L.Ed. 1121, 1126 (1944); *Riggle,* 577 F.2d 579. Simply put, California has not waived its constitutional sovereign immunity in passing its tort claims act. *Riggle,* 577 F.2d 579. Therefore, the State's and the CHP's motion is granted, and Counts Three through Six are accordingly dismissed with respect to these defendants.

### B. *Officers Van Demark and Wood* [2]

■ Although these defendants are officers of the State's agency, the CHP, they are not shielded by the State's eleventh amendment immunity. This holding applies to both the state and federal causes of action. To justify a finding that the officers are immune, the court would have to conclude that the action against them is actually one against the State, where the latter is the "real, substantial party in interest." *Pennhurst State School & Hospital v. Halderman (Pennhurst II),* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67, 79 (1984) (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389, 394 (1945)). Such a case, of course, would be barred by the eleventh amendment. The only support for this conclusion is that the State is obligated to indemnify the officers for any damage award levied against them for acts performed within the scope of their employment. *See* Cal.Govt.Code § 825.[3] This argument, however, lacks merit.

On at least two occasions, the Ninth Circuit has explicitly rejected the argument that a wholly collateral and voluntary indemnification program between a state and its officers extends the state's eleventh amendment immunity to the officers. *See Demery v. Kupperman,* 735 F.2d 1139, 1147–49 (9th Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985) (Cal.Govt.Code § 825 does not immunize state officers in section 1983 actions); *Ronwin v. Shapiro,* 657 F.2d 1071, 1074–75 (9th Cir.1981) (similar Arizona statute does not shield state officers from state tort liability). A contrary holding might well produce the incongruity whereby a state, in "creating a fund to compensate victims, has somehow extended immunity [to state employees] so as to deny payment to the class of intended beneficiaries." [4]

---

**2.** Although the parties have not addressed this topic, the court discusses it *sua sponte* because the eleventh amendment limits federal subject matter jurisdiction.

**3.** The relevant portion of section 825 states:

"(a) If an employee or former employee of a public entity requests the public entity to defend him against any claim or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity and such request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.

"If the public entity conducts the defense of an employee or former employee against any claim or action with his reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or

settlement of the claim or action to which the public entity has agreed; but, where the public entity conducted such defense pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise or settlement until it is established that the injury arose out of an act or omission occurring within the scope of his employment as an employee of the public entity, the public entity is required to pay the judgment, compromise or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his employment as an employee of the public entity."

The court assumes without deciding that the requirements of this provision would be satisfied and that California would be obligated to indemnify defendants Van Demark and Wood.

**4.** As the *Demery* court noted, such a holding would be particularly anomalous when federal rights were at stake because the state could unilaterally prevent the vindication of federal rights in federal court.

*Demery,* 735 F.2d at 1147; *Ronwin,* 657 F.2d at 1075 (quoting *Palmer v. Penn-Ohio Road Materials, Inc.,* 470 F.Supp. 1199, 1203 (W.D.Pa.1979)). Thus, both panels concluded that "a state should not be able to turn a purely intramural arrangement with its officers into an extension of sovereign immunity." *Ronwin,* 657 F.2d at 1074 (quoting L. Tribe, *American Constitutional Law,* 132–33 n. 22 (1978)).[5] A simple indemnification scheme does not transform a case against individuals into one against the state. This court has proper subject matter jurisdiction over all causes of action against defendants Van Demark and Wood.

## II. *SECTION 1985*

Defendants Van Demark and Wood move to dismiss the Guzmans' section 1985 cause of action for failure to state a claim upon which relief can be granted. *See* Fed.R. Civ.P. 12(b)(6). Because the court cannot imagine any set of circumstances upon which plaintiffs might be afforded relief under 42 U.S.C. § 1985, the motion to dismiss Count Two is granted with prejudice.

Although the complaint does not indicate under which subsection of section 1985 the Guzmans assert their claim, the only conceivably applicable subsection is section 1985(2). This statute makes unlawful certain conspiracies to obstruct justice in fed-

eral and state courts. Count Two of the complaint alleges that defendants Van Demark and Wood unlawfully conspired against Guzman by depriving him of exculpatory evidence to which he was entitled in the underlying state criminal case. Specifically, the CHP officers are accused of withholding and erasing portions of tape recorded interviews of an eyewitness to the August 24, 1984, freeway altercation. Complaint, ¶¶ 14–22. While such conduct is undoubtedly illegal, plaintiffs cannot state a claim under this statute.

■ The first part of section 1985(2) (conspiracies to interfere with the administration of justice in federal courts) plainly proscribes the use of "force, intimidation, or threat" to influence parties, witnesses or jurors in federal proceedings.[6] In this case, as in *Dooley v. Reiss,* 736 F.2d 1392 (9th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984) (plaintiffs alleged that defendants conspired to commit perjury and conceal evidence), no cause of action can be stated under the first clause of section 1985(2) because the alleged interference was not caused by force, intimidation or threat.[7]

■ Plaintiffs also cannot state a cause of action under the second clause of section 1985(2).[8] This statute outlaws conspiracies

---

**5.** Unlike the present case, the federalism concerns of the eleventh amendment are implicated where *"because of the nature of the claim asserted"* the award must be paid from the state treasury. *Demery,* 735 F.2d at 1148. *See Penhurst II,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) Here, defendants Van Demark and Wood are individually liable; the State's obligation to pay derives not from the nature of plaintiffs' claims, but rather from the State's collateral arrangement with its officers. *See Demery,* 735 F.2d at 1148–49.

**6.** The first clause of section 1985(2) states:

"If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indict-

ment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

**7.** Plaintiffs did not oppose the motion to dismiss Count Two in their papers or at oral argument. Not only is section 1985(2), clause one, inapplicable because the force/intimidation/threat element is lacking, it is of no avail to plaintiffs because the underlying charges were filed in state, not federal, court.

**8.** The second clause of section 1985(2) states: "[O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the

to obstruct justice in state court, but it does not mandate a showing of force or coercion. However, under this part of section 1985(2), a successful plaintiff must allege and prove that the defendants were motivated by racial or other class-based discriminatory animus. *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir.1985); *Phillips v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 118*, 556 F.2d 939 (9th Cir.1977); *see also Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345 (9th Cir.1981), *aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Nothing in the complaint or in plaintiffs' opposition memorandum indicates—nor did plaintiffs suggest at the hearing—that the officers had any such motivation. Thus, plaintiffs cannot state a claim for a violation of the second part of section 1985(2). Consequently, Count Two of the complaint is dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).

## III. *STATUTE OF LIMITATIONS*[9]

### A. *Section 1983*

■ Defendants Van Demark and Wood move to dismiss Count One arguing that the applicable statute of limitations bars plaintiffs' cause of action. The section 1983 claim accrued on the date of Guzman's arrest, August 24, 1984. Section 1983 does not specify its own limitations period; therefore, federal courts must adopt the appropriate state statute of limitations using the law of the state most connected to the litigation. *Chung v. Po-*

*mona Valley Community Hospital*, 667 F.2d 788 (9th Cir.1982); 42 U.S.C. § 1988. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that section 1983 claims should be invariably characterized as personal injury actions for determining which state statute of limitations should be borrowed under 42 U.S.C. § 1988. Under *Wilson*, the statute of limitations for section 1983 claims is one year pursuant to Cal.Civ. Proc.Code § 340(3).[10] Prior to *Wilson*, the applicable statute of limitations was three years. *Bergschneider v. Denver*, 446 F.2d 569 (9th Cir.1971); *Smith v. Cremins*, 308 F.2d 187 (9th Cir.1962).

In the present case, the three-year statute of limitations, Cal.Civ.Proc.Code § 338(1), governed when plaintiffs' section 1983 cause of action accrued on August 24, 1984. Approximately eight months later, on April 17, 1985, *Wilson* was decided. Plaintiffs filed their complaint on April 9, 1986. The court must determine whether *Wilson* will be given retrospective or prospective effect in a situation in which the cause of action accrued prior to that decision and in which the complaint was filed after that decision.

Plaintiffs contend that *Wilson* should be applied so as to permit them to file their complaint up to one year after that case was decided. In their view, the April 9, 1986, filing preceded the April 16,[11] 1986, deadline by one week.

Plaintiffs cite *Rivera v. Green*, 775 F.2d 1381 (9th Cir.1985), *cert. denied*, 476 U.S. ——, 106 S.Ct. 1656, 90 L.Ed.2d 198 (1986), for the proposition that *Wilson* should not be applied retroactively when to do so

---

laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

**9.** Because the plaintiffs have failed to state a claim under 42 U.S.C. § 1985(2), the court does not reach the issue of whether such claim would be time-barred.

**10.** The relevant portion of section 340(3) provides:

"Within one year:
An action for ... battery ... or for injury to ... one caused by the wrongful act or neglect of another...."

**11.** Defendants are correct that Cal.Civ.Proc. Code § 340(3) mandates that timely complaints shall be filed *within* one year of the action's accrual. Thus, even under plaintiffs' theory, they had until April 16, 1986, not April 17, 1986, as they have argued, to file their complaint.

would shorten the applicable limitations period. In *Rivera,* the cause of action accrued, then the applicable one-year Arizona statute of limitations ran, and, finally, Rivera filed his complaint. While his case was pending, the court decided *Wilson* which changed the limitations period to two years under Arizona law. The Ninth Circuit analyzed Rivera's situation under the doctrine announced in *Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and decided to apply *Wilson* retroactively so as to lengthen the limitations period and allow the complaint to stand. While *Rivera* 's methodology is instructive, the case is distinguishable because, unlike the present case, the complaint in that case had been filed before *Wilson* was decided.

Defendants argue that the Ninth Circuit's recent decision in *Gibson v. United States,* 781 F.2d 1334 (9th Cir.1986), controls the disposition of this case. This argument fails for two reasons. First, the two cases are factually distinguishable. *Gibson* involved the situation in which the plaintiffs filed their complaint more than one year, but less than three years, after their section 1983 cause of action accrued. When the complaint was filed, the applicable statute of limitations was the three-year Cal.Civ.Proc.Code § 338(1). While the case was pending on appeal of other issues, the Supreme Court issued the *Wilson* opinion. As in *Rivera,* the *Gibson* court weighed the *Chevron* factors, and determined that *Wilson* should be applied prospectively when to do otherwise would shorten the limitations period. Second, defendants' reliance on *Gibson* is misplaced because that case simply does not stand for the rule of law that they attribute to it. Defendants cite *Gibson,* 781 F.2d at 1339, for the proposition that "the law in effect on the date of a filing of an action controls whether *Wilson* will be applied retroactively," Moving Papers at 12:22–24; *see also* Reply Papers at 5:16–21. This is not the rule of *Gibson.*[12]

As in *Rivera,* the precise holding of *Gibson* does not control the issue before this court. *Gibson* holds that "under *Chevron* [,] ... *Wilson* should not be retroactively applied to oust claims that were timely when filed." 781 F.2d at 1340. This language is apt because the complaint in *Gibson* was unquestionably timely when it was filed.[13] Here, the very issue to be decided is whether the claim was "timely when filed."

---

**12.** Moreover, the teachings of that case bolster the Guzmans', not the officers', line of argument.

**13.** *See Gibson,* 781 F.2d at 1339. In distinguishing the *Rivera* holding, the court stated:

"In this case, retroactive application would thwart, rather than enhance, the remedial purposes underlying section 1983. Thus, we undertake an independent retroactivity analysis on the facts of this case, and we conclude that, when retroactive application would shorten the statute of limitations, *Wilson* merits only prospective effect.[1] We thereby join the Tenth Circuit in rejecting retroactive application that would bar 'plaintiffs' right to their day in court when their action was timely under the law in effect at the time their suit was commenced.' *Jackson v. City of Bloomfield,* 731 F.2d 652, 655 (10th Cir.1984), (quoted with approval in *Wilson,* 105 S.Ct. at 1941 n. 10)." (footnote omitted).

Defendants Van Demark and Wood harp on the last sentence of this passage to support their view of *Gibson.* The quotation from *Jackson,* however, merely echoes *Gibson's* holding. That holding highlights, not resolves, the issue in this case. Moreover, the penultimate sentence of the quoted passage counsels against giving *Wilson* retroactive effect when to do so would abbreviate the limitations period. Finally, the omitted footnote (n. 1) further weakens defendants' argument:

"Our result is consistent with a recent line of employee suits under § 301 of the Labor Management Relations Act, 1947, in which this court determined the retroactivity of an unforeseen Supreme Court redefinition of the limitations period on an openly ad hoc basis, simply by gauging whether the effect in the given case was either to shorten or lengthen the governing period. *Compare Glover v. United Grocers Inc.,* 746 F.2d 1380 (9th Cir.1984) (adopting six-month statute of limitations retroactively because it lengthened pre-existing period), *cert. denied* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985), *with Edwards v. Teamsters Local Union No. 36,* 719 F.2d 1036 (9th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984) (declining retroactive application of a shorter statute of limitations)."
*Gibson,* 781 F.2d at 1339 n. 1.

▇ To determine if a newly formulated rule of law will be applied retroactively, this court must consider the three factors announced in *Chevron*. These factors are "(1) whether the decision establishes a new principle of law, (2) whether retroactive application will further or retard the purposes of the rule in question, and (3) whether applying the new decision will produce substantial inequitable results." *Barina v. Gulf Trading and Transp. Co.*, 726 F.2d 560, 563 (9th Cir.1984) (applying *Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355, 30 L.Ed.2d at 306). These factors counsel against barring the Guzmans' section 1983 claim.

▇ First, *Wilson* certainly establishes a new legal principle. "By directing courts to tie section 1983 actions to a different, shorter limitations provision, *Wilson* marks a clear break from settled circuit authority, potentially of great prejudice to litigants who relied upon the earlier rule." *Gibson*, 781 F.2d at 1339. While officers Van Demark and Wood correctly assert that *Wilson* preceded the Guzmans' complaint, from the time the action accrued until *Wilson* was decided, the Guzmans were entitled to rely on the pre-*Wilson* three-year statute of limitations. This factor militates against retroactively barring plaintiffs' claim.

As in *Gibson*, here, the "second *Chevron* factor—whether retroactive application would advance or retard uniform federal characterization of section 1983 claims—does not counsel either way" because the Ninth Circuit's pre-*Wilson* rulings served the chief policy goals of *Wilson* (protecting the rights of federal civil rights litigants, achieving certainty and avoiding wasteful relitigation of collateral matters). *Gibson*, 781 F.2d at 1339.

The final *Chevron* factor weighs heavily against applying *Wilson* so as to bar the Guzmans' cause of action. During the eight months between the altercation and the *Wilson* decision, plaintiffs permissibly and correctly believed that they could file their lawsuit as late as August 23, 1987. Yet to give *Wilson* the effect defendants advocate, on April 17, 1985, plaintiffs would suddenly be compelled to file their complaint within four months, not within the twenty-eight months to which they had been entitled on April 16, 1985. This scenario is not as compelling as that in *Gibson* because here plaintiffs would still have four months within which to file.

Nonetheless, it would be substantially inequitable to force this overly abbreviated deadline upon them. At oral argument, defendants conceded that if *Wilson* had been been decided almost one full year after the cause of action accrued, *e.g.*, after fifty-one weeks or even eleven months, it might be unreasonable to give plaintiffs only one week or one month to file their complaint. Defendants urge the court to rule that four months provides adequate filing time. These extreme examples, however, belie defendants' argument. In some situations, four months, or even one month, might give a plaintiff ample opportunity to file.

Not only should the court avoid such highly speculative calculations, but to engage in this type of ad hoc process would clearly undermine the uniformity and certainty for which statutes of limitation are designed. In the case before the court, it would be fundamentally unfair to reduce the Guzmans' filing period to four months under *Wilson* when similarly situated plaintiffs who were injured a day after *Wilson* was decided would be given a full year in which to file.[14] The remedial purposes of section 1983 are better served by applying *Wilson* so as to permit the Guzmans to have brought their suit by April 16, 1986. By contrast, this application does not prejudice defendants in any way.

Accordingly, the court holds that the complaint was timely filed on April 9, 1986, because the statute of limitations did not run until April 16, 1986. This application

---

**14.** *But cf. Gamel v. City of San Francisco*, 633 F.Supp. 48 (N.D.Cal.1986) (under similar circumstances, court applied *Wilson* so as to bar plaintiff's causes of action simply declaring that eight months constituted ample time for plaintiff to have filed his complaint).

of *Wilson* effectively shortens the limitations period from three years to approximately seventeen months, but it does not do so to any party's detriment. On the other hand, reducing the period to four months would certainly contravene the doctrine of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296.

### B. *State Torts*

 The statute of limitations for the Guzmans' state common law counts have not run. Defendants erroneously contend that these causes of action are barred by the one-year limitation of Cal.Civ.Proc.Code § 340. Rather, they are governed by provisions of the California Tort Claims Act, Cal.Govt.Code §§ 810, *et seq.* Under this act, plaintiffs could file a timely complaint at least two years after the August 24, 1984, incident. In lawsuits against public employees, Cal.Govt.Code § 950.2 requires prospective plaintiffs to make a claim against the employing public entity before filing their complaint. *See* Cal.Govt.Code § 950.2 (Official Law Revision Commission Comment (1965 Amendment)). This claim must be made within 100 days after the cause of action accrues. Cal.Govt.Code § 911.2. The Guzmans presented their claim to the State on November 9, 1984,[15] well within the 100–day period. Because the State did not act on the claim within forty-five days after presentation, the claim was deemed rejected on the final day of that period, December 24, 1984. Cal.Govt. Code §§ 912.6, 912.4. A two-year statute of limitations, Cal.Govt.Code § 945.6(a)(2) governs suits based upon claims which have been deemed rejected. Cal.Govt.Code § 950.6.[16] Therefore, the Guzmans' complaint would have been timely as late as August 23, 1986.[17]

### CONCLUSION

The motion is granted to the extent that Counts Three through Six are dismissed against the State and the CHP. These defendants are immune from suit in this court under the eleventh amendment. The motion is also granted in that plaintiffs' section 1985 claim (Count Two) is dismissed with prejudice. In all other respects, the motion is denied. Defendants Van Demark and Wood enjoy no sovereign immunity in this case, and no statute of limitations has run against any of the plaintiffs' claims. As the court has proper subject matter jurisdiction over the Guzmans' section 1983 claim, 28 U.S.C. §§ 1331, 1343, the court declines to dismiss the state common law causes of action at this time and will, at least until the pre-trial conference, exercise its pendent jurisdiction to retain those causes of action. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

IT IS SO ORDERED.

---

**15.** Complaint, ¶ 9, Ex. D. The November 9, 1984, presentation date is not indicated on the claim form, yet defendants do not dispute that this was the date the Guzmans filed their claim. On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court assumes plaintiffs' allegations to be true. *Hall v. City of Santa Barbara,* 797 F.2d 1493 (9th Cir.1986); *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir.1983).

**16.** Cal.Govt.Code § 945.6(a)(1) (six-month statute of limitations applicable to claims which are actually rejected by the State) and the State's rejection of the Guzmans' claim on January 2, 1985, are of no consequence: once the claim was deemed rejected on December 24, 1984, section 945.6(a)(2) controls.

**17.** Additionally, Mr. Guzman would have been entitled to file a complaint until February 27, 1987. The statute of limitations was tolled with respect to him because his criminal charges were pending until February 28, 1985. Cal. Govt.Code § 945.3.