[No. 39553-3-II.  Division Two.  June 28, 2011.]

LAWRENCE SCHMITT, *Appellant*, v. DORIS LANGENOUR, *Defendant*, JENNIFER FORBES, *Respondent*.

398

*Lawrence Schmitt*, pro se.

*Robert M. McKenna, Attorney General, Michael P. Lynch, Senior Counsel*, and *Andrew Logerwell, Assistant*, for respondent.

¶1 WORSWICK, J. — Lawrence Schmitt appeals the trial court's grant of summary judgment based on qualified immunity in favor of Jennifer Forbes, a deputy prosecutor with the Kitsap County Prosecuting Attorney's Office (KCPAO), on his 42 U.S.C. § 1983 claims of false arrest, false imprisonment, and malicious prosecution. Forbes cross appeals, arguing that she was entitled to absolute immunity. We affirm the order granting summary judgment, holding that Jennifer Forbes is entitled to both qualified immunity and absolute immunity.

## FACTS

¶2 On June 16, 2002, Schmitt noticed two dogs on his property chasing after his geese, chickens, and rabbits. Based on the direction the dogs went as he chased them away, Schmitt assumed the dogs belonged to his neighbor,

Doris Langenour. Schmitt paid a visit to Langenour's home. He explained to her what had happened and said that he would shoot the dogs if they came onto his property again. According to Schmitt, he was cordial and explained that he did not want to hurt Langenour's dogs but that he had a right to protect his animals. He also invited Langenour to bring her children over to his home sometime to see his animals.

¶3 Langenour then drove down her street to see where Schmitt lived. She saw his van and then visited his neighbors across the street to learn more about Schmitt. One of the neighbors, Anthony Fellis, informed her that criminal charges for assault were pending against Schmitt for allegedly shooting at Fellis. The neighbors also mentioned to Langenour that Schmitt shot one of their dogs. Langenour then called 911 to report that Schmitt threatened to shoot her dogs.

¶4 Langenour talked with Kitsap County Sheriff's Office Deputy Benjamin Herrin later in the day and explained that Schmitt had threatened to shoot her dogs. At this time, Langenour did not tell Deputy Herrin that Schmitt had threatened to shoot her. Deputy Herrin told Langenour that Schmitt could legally shoot her dogs if they came after his animals.

¶5 The next day, Langenour contacted Linda Fellis to discuss the situation. Linda Fellis suggested that she contact Forbes because she was the deputy prosecutor working on Schmitt's pending criminal case. Based on Linda Fellis's suggestion, Langenour contacted Forbes later that day. Langenour and Forbes had a very brief conversation in which Langenour characterized her encounter with Schmitt the day before a bit differently. Langenour told Forbes that she was scared and that she felt threatened by Schmitt. She also said that she was upset that Deputy Herrin did not react differently to the situation. Langenour then told Forbes that Schmitt threatened to shoot her and her dogs.

¶6 After their conversation ended, Forbes searched for a report from Deputy Herrin's visit with Langenour the previous day, but she was unable to find it in the computer

system. Forbes then asked Deputy Mike Davis, a supervisor with the sheriff's department, to try to locate the report and to let her know if one was available. When Deputy Herrin contacted Forbes to follow up on her request, Forbes asked that Deputy Herrin provide her with a copy of the report when it was complete because it might show a violation of Schmitt's pretrial release on his criminal charges. Forbes also asked Deputy Herrin to interview Langenour again, suggesting that she might have additional information about what had happened. Forbes directed Deputy Herrin that if, after the interview, he found probable cause for an arrest, he should be sure to book Schmitt under the pending case number. Forbes's involvement ended after this and she went on vacation. She conducted no additional work on this case.

¶7 Deputy Herrin talked to Langenour by telephone to discuss the situation again. This time Langenour told Deputy Herrin that Schmitt had threatened to *shoot her* and her dogs. Deputy Herrin visited Langenour's home and asked that she sign a written statement to that effect, which she did. After this, Deputy Herrin arrested Schmitt. Schmitt denied threatening Langenour or her dogs.

¶8 A few days later, another deputy prosecutor charged Schmitt with felony harassment based on Deputy Herrin's report and Langenour's statement. And based on Schmitt's alleged conduct, another deputy prosecutor successfully sought to revoke Schmitt's pretrial release agreement and to increase his bail on the assault charge involving Fellis. Based on this increase in bail, Schmitt was taken into custody. At the time these decisions were made, Forbes was still on vacation and was unaware of what had happened.

¶9 Before trial on the charge of felony harassment against Langenour, Schmitt moved to disqualify Forbes from prosecuting charges against him because she had investigated the case and would serve as a material witness. *See State v. Schmitt*, 124 Wn. App. 662, 665, 102 P.3d 856 (2004). The trial court agreed and also disqualified the entire prosecutor's office because Forbes had personal in-

volvement with Schmitt's prosecution. *Schmitt*, 124 Wn. App. at 665. Our court granted the State's motion for discretionary review on that issue and ultimately held that the order disqualifying Forbes was proper, but we reversed the trial court's disqualification of the entire KCPAO. *Schmitt*, 124 Wn. App. at 669. After our court's decision, another deputy prosecutor reviewed the felony harassment case against Schmitt that was based on Langenour's allegations and dismissed the charges.

¶10 On October 10, 2005, Schmitt filed a complaint alleging false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983,[1] naming Langenour, Forbes, and the KCPAO as codefendants.[2] In early 2006, Langenour was dismissed from the suit by stipulation. And soon thereafter, the KCPAO was dismissed. In April 2008, Forbes moved for summary judgment based on absolute and qualified immunity. The trial court denied her motion based on absolute immunity and provided Schmitt with additional time for discovery in order to address the qualified immunity issues. On June 26, 2009, the trial court dismissed Schmitt's suit based on qualified immunity. Schmitt appeals and Forbes cross appeals.

## ANALYSIS

¶11 Schmitt contends that the trial court erred in granting Forbes's motion for summary judgment. And on cross appeal, Forbes contends that the trial court erred in finding

---

[1] 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[2] Schmitt also alleged state law claims of false imprisonment and outrage, but he never pursued those claims below. Under RAP 9.12, we consider only evidence and issues called to the attention of the trial court when reviewing a summary judgment order. Thus, we do not reach those claims here.

that she was entitled only to qualified immunity, not absolute immunity, for her conduct.[3]

## STANDARD OF REVIEW

¶12 We review an order granting summary judgment de novo and engage in the same inquiry as the trial court. *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321 (1998). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). "A 'material fact' is a fact upon which the outcome of the litigation depends, in whole or in part." *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). We construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

¶13 A defendant moving for summary judgment bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Thereafter, the nonmoving party must set forth specific facts evidencing a genuine issue of material fact for trial, but "[t]he nonmoving party may not rely on speculation or argumentative assertions." *Craig v. Wash. Trust Bank*, 94 Wn. App. 820, 824, 976 P.2d 126 (1999).

## QUALIFIED IMMUNITY

¶14 Schmitt contends that Forbes was not entitled to qualified immunity on his § 1983 claims of false arrest, false imprisonment, and malicious prosecution because she

---

[3] The trial court's summary judgment order does not state whether it granted Forbes's motion based on absolute or qualified immunity. According to Forbes, however, the trial court first denied her motion based on absolute immunity grounds and then moved forward on the issue of qualified immunity after permitting Schmitt to depose witnesses.

violated a clearly established right and because her conduct was not objectively reasonable. Under the doctrine of qualified immunity, "[g]overnment officials performing discretionary functions" are immune from § 1983 suits "if their conduct is objectively reasonable when measured against clearly established law." *Robinson v. City of Seattle*, 119 Wn.2d 34, 64-65, 830 P.2d 318 (1992). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). It is not necessary that a court have previously held the official's conduct is unconstitutional; rather, "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640.

¶15 "When the defendant moves for summary judgment in a § 1983 suit and raises a qualified immunity defense, the court has two questions before it." *Jones v. State*, 170 Wn.2d 338, 349, 242 P.3d 825 (2010). "One is whether the plaintiff's allegations establish a connection between the defendant's conduct and the violation of a constitutional right." *Jones*, 170 Wn.2d at 349 (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)). "There must be 'a genuine issue as to whether the defendant in fact committed those acts.'" *Jones*, 170 Wn.2d at 349 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)).

¶16 "The second question is whether the defendant's conduct was objectively reasonable in light of clearly established law." *Jones*, 170 Wn.2d at 349 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The court may answer these questions in whichever 'order of decisionmaking that will best facilitate the fair and efficient disposition of each case.'" *Jones*, 170 Wn.2d at 349 (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 821, 172 L. Ed. 2d 565 (2009)). "These are both 'essentially legal question[s]' for the court to decide." *Jones*, 170 Wn.2d at 349 (alteration in original) (quoting

*Mitchell*, 472 U.S. at 526). We employ de novo review of legal questions decided on summary judgment. CR 56(c); *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003).

¶17 Schmitt argues that Forbes violated the clearly established constitutional right that bars a prosecutor from knowingly using perjured testimony in order to secure a criminal conviction. Schmitt further argues that any reasonable official in Forbes's shoes would have known that her conduct was unlawful because (1) suborning perjury is a crime, (2) to do so is a violation of professional ethics, and (3) this is not a case of first impression.

¶18 The issue posed by Schmitt's argument is whether sufficient evidence exists to support his proposition that a reasonable prosecutor would have understood that she was violating Schmitt's rights by suborning perjury. *See Anderson*, 483 U.S. at 640. But there is no evidence in the record to suggest that Forbes was actually suborning perjury or that a reasonable prosecutor here would have believed that she was suborning perjury. Schmitt's argument is based solely on speculation and conjecture. The facts demonstrate that Forbes talked with Langenour for only a very brief time and afterward only asked Deputy Herrin to talk to Langenour again. And, as Forbes points out, she went on vacation after that and the charging decisions were made by others. Although Schmitt speculates that Forbes encouraged Langenour to lie or exaggerate, there is no evidence of this. Thus, Schmitt has failed to raise any material issues of fact on this issue. The trial court correctly held that Forbes was entitled to qualified immunity. Schmitt's argument on this point fails.[4]

ABSOLUTE IMMUNITY

¶19 On cross appeal, Forbes contends that the trial court erred by not dismissing the action based on absolute immun-

---

[4] Schmitt also argues that he presented sufficient prima facie evidence of his claims of false arrest, false imprisonment, and malicious prosecution. Because we resolve this case on immunity grounds, we do not reach these issues.

ity. Schmitt counters that Forbes was not entitled to absolute immunity because she did not act within the scope of her duties as deputy prosecutor when she asked Deputy Herrin to visit Langenour to discuss "additional information" about what happened.

¶20 Generally, prosecuting attorneys, as quasi-judicial actors, are absolutely immune from liability for acts done in the performance of their official duties, even if they act maliciously or willfully. *Mitchelle v. Steele*, 39 Wn.2d 473, 474, 236 P.2d 349 (1951) (prosecuting attorney immune in malicious prosecution action for actions taken within official duties). Washington courts closely follow federal constructs as they relate to absolute immunity. *Musso-Escude v. Edwards*, 101 Wn. App. 560, 567-68, 4 P.3d 151 (2000). And an analysis of the prosecutor's absolute immunity from suit under state law tracks the common law immunity analysis under 42 U.S.C. § 1983. *Musso-Escude*, 101 Wn. App. at 567-68.

¶21 The issue posed here is whether Forbes's brief interaction with Langenour and subsequent discussion with Deputy Herrin in which she asked him to interview Langenour again fell outside the scope of her duties as a deputy prosecutor. As Schmitt points out, when a prosecutor is acting as an investigator, she is typically not protected by absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). But as Forbes states, certain investigative acts, when undertaken in direct preparation for judicial proceedings, are subject to absolute immunity. *See Springmen v. Williams*, 122 F.3d 211, 213-14 (4th Cir. 1997).

¶22 Forbes argues that federal courts have routinely afforded absolute immunity to prosecutors for actions similar to hers, citing *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir. 1984), *cert. denied*, 469 U.S. 1127 (1985), to support her assertion. In *Demery*, the court held that "conferring with potential witnesses for the purpose of determining whether to initiate proceedings is plainly a function 'intimately associated with the judicial phase of the criminal process,'

and is therefore a quasi-judicial function 'to which the reasons for absolute immunity apply with full force.'" 735 F.2d at 1144 (citation omitted) (quoting *Imbler*, 424 U.S. at 430). *Demery* also recognized a number of other cases in which absolute immunity barred claims, including *Lee v. Willins*, 474 F. Supp. 970 (E.D.N.Y. 1979) (a prosecutor was absolutely immune from suit alleging that he coerced false testimony) and *Heidelberg v. Hammer*, 577 F.2d 429 (7th Cir. 1978) (prosecutor was absolutely immune from suit alleging that he falsified line-up reports). 735 F.2d at 1144.

¶23 This case falls squarely within the absolute immunity protections recognized in *Demery*. Forbes's brief conversation with Langenour and her follow-up conversation and request of Deputy Herrin were carried out to determine whether to bring additional charges against Schmitt. Based on this, Forbes's conduct was subject not only to qualified immunity as the trial court held, but also subject to absolute immunity. Thus, Forbes's argument on this point prevails.

DISCOVERY

¶24 Lastly, Schmitt contends that the trial court effectively denied him his discovery rights and that it should have postponed the summary judgment hearing under CR 56(f).[5] We review a trial court's refusal to grant a continuance for an abuse of discretion. *Durand v. HIMC Corp.*, 151 Wn. App. 818, 828, 214 P.3d 189 (2009). "A trial court abuses its discretion only when its decision is manifestly unreasonable, or when its discretion is exercised on untenable grounds or for untenable reasons." *TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc.*,

---

[5] CR 56(f) provides:

**When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

140 Wn. App. 191, 214, 165 P.3d 1271 (2007). Contrary to Schmitt's contention, however, the record in this case demonstrates that Schmitt was provided several months to conduct discovery. In light of this and considering the broad discretion given to the trial court to consider continuance requests, Schmitt's argument here fails.

¶25 We affirm the trial court's order granting summary judgment in favor of Forbes on qualified immunity grounds. Additionally, we hold that Forbes was also entitled to absolute immunity.

PENOYAR, C.J., and HUNT, J., concur.