FILED
COURT OF APPEALS
DIVISION II

2014 JUL 22 AM 10: 22

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JANICE GEARY (Formerly Known as Valli), | No. 43712-1-II |
| Appellant, | |
| v. | |
| ING BANK, FSB, a Delaware corporation; AURORA LOAN SERVICES LLC, a Washington Limited Liability Company; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation; ONE OR MORE INDIVIDUALS OR ENTITIES YET UNKNOWN, | |
| Respondents. | Consolidated with |
| ING BANK, FSB, a Delaware corporation, | No. 44619-7-II |
| Respondent, | |
| v. | |
| JANICE VALLI; All Occupants and Persons in Possession, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — In this consolidated case, Janice Geary appeals from orders entered in two separate matters following non-judicial foreclosure on her property. In the first matter, Geary sued ING Bank FSB, Aurora Loan Services LLC, Quality Loan Service Corp., and unknown defendants. Geary argues that the trial court erred by denying her motion for partial summary judgment and granting the defendants' cross-motions for summary judgment

dismissing her claims of (1) quiet title, (2) violations of the Deed of Trust Act,[1] (3) fraud in the inducement, and (4) violations of the Consumer Protection Act.[2] Geary further claims that the trial court erred by (5) dismissing her claims in light of Geary's allegation that ING and Aurora fraudulently evaded the excise tax. In the second matter, ING brought an unlawful detainer action to evict Geary. Geary argues (6) the trial court erred by entering summary judgment for ING in the unlawful detainer action. We disagree with each of Geary's arguments and affirm the trial court in both matters. We further grant ING's request for attorney fees on appeal, but we deny Aurora's request.

## FACTS

A. *Substantive Facts*

Under a promissory note executed in February 2005, Janice Geary borrowed $620,000 from Pierce Commercial Bank to finance the purchase of residential property in Buckley, Washington.[3] The adjustable-rate note obligated Geary to pay only interest for 10 years, followed by 20 years of payments of interest and principal.

The parties recorded a deed of trust listing Geary as borrower, Pierce as lender and beneficiary, and Transnation Title Insurance Co. as trustee holding title to the property. In the

---

[1] Chapter 61.24 RCW.

[2] Chapter 19.86 RCW.

[3] At the time of the purchase, Janice Geary was known as Janice Valli. ING later asserted that the purchase was not an arms-length transaction. Three months after the purchase, Janice Geary married the seller of the property, James Geary. After the purchase, both James Geary and Janice Geary lived in the property. Further, ING asserted that Janice Geary acted as the real estate agent on the purchase, and both she and her employer received commissions for the sale.

event of Geary's default on the note, the deed of trust provided for a trustee's sale of the property to effect a non-judicial foreclosure.

Both the deed of trust and the note authorized Pierce and its successors to assign the note together with the deed of trust to another party. Pierce recorded an assignment of the note and the beneficial interest in the deed of trust to Lehman Brothers Bank, FSB. In turn, Lehman recorded an assignment of the note and the beneficial interest in the deed of trust to Mortgage Electronic Registration Systems, Inc. (MERS).

The deed of trust authorized the lender to designate the loan servicer. Pierce designated Aurora Loan Services, Inc. as the loan servicer.

Geary was current on her payments in November 2008, when she called Aurora to tell them she could not keep up with the payments and to inquire about a loan modification. According to Geary's affidavit, an Aurora representative advised that Aurora had authority to modify the loan, but it would do so only if she were 60 to 90 days late on her payments. At a deposition Geary testified that, based on this advice, she stopped making payments in December 2008. She has never resumed payments.

Aurora repeatedly denied Geary's requests to modify her loan in three separate letters, each dated in December 2008. First, Aurora wrote Geary that it would deny her loan modification request because it lacked proof of Geary's income. Geary then submitted proof of her income from rent and child support. Second, Aurora denied Geary's request because she was "[f]inancially unable to afford monthly payments" even on modified terms. Clerk's Papers (CP) (No. 43712-1) at 721. Aurora then denied a third request because it lacked Geary's most recent pay stubs.

3

Nonetheless, Geary averred that Aurora denied her request by telephone in March 2009 because she did not meet the loan holder's standards for modifications, and that this reason contradicted Aurora's earlier representation that Aurora had authority to modify the loan. Geary also submitted a declaration from a former Aurora loan officer. The loan officer averred that Aurora's loan officers were instructed to tell all customers that Aurora had no authority to alter a loan's interest rate. But the loan officer's declaration was dated May 2006, well before Geary attempted to modify her loan.

In March 2009, a notice of default was issued by Quality Loan Service Corp., acting as the agent of the beneficiary, MERS. Days later, MERS appointed Quality as trustee of the deed of trust, succeeding Transnation.[4] Then in April 2009, MERS recorded an assignment of the note and the beneficial interest in the deed of trust to Aurora.

Quality gave Geary notice of a trustee's sale scheduled for July 2009. In two letters, Geary denied Quality's authority to act as trustee. But Geary did not seek an injunction restraining the trustee's sale. After four continuances, the trustee's sale occurred in November 2009.[5]

At the trustee's sale ING Bank, FSB purchased the property for $668,991, the amount Geary then owed on the note. Accordingly, Aurora directed Quality to take title in the name of

---

[4] The beneficiary of a deed of trust may replace the trustee. RCW 61.24.010(2).

[5] The parties agree that before the trustee's sale, a series of unrecorded conveyances purportedly transferred the beneficial interest in the deed of trust from one bank to another. But an unrecorded conveyance of the beneficial interest in a deed of trust is void against any subsequent purchaser who acquires the interest via a recorded conveyance. RCW 65.08.070. Thus we ignore the unrecorded assignments and consider only the chain of title established by the recorded assignments of the beneficial interest in the deed of trust.

ING. But in December 2009, Quality recorded a trustee's deed upon sale that named Aurora as the grantee of the property.

Five months later, in May 2010, Quality recorded a "corrective trustee's deed upon sale" naming ING as the grantee of the property. CP (No. 43712-1) at 185. Also in May 2010, Aurora assigned the deed of trust and the note to ING in a recorded "corporate assignment of deed of trust." CP (No. 43712-1) at 180 (emphasis omitted).

By her own admission, Geary continued to live on the property for at least three years and four months without paying rent or mortgage.

B.      *Geary's Suit Against ING, Aurora, Quality, and Unknown Defendants*

In May 2011, Geary commenced a suit against ING, Aurora, Quality, and unknown individuals or entities. Geary's suit sought to set aside the corrective trustee's deed upon sale, quiet title to the property, recover money damages, and restrain the defendants from taking further foreclosure action. Geary alleged violations of the Deed of Trust Act and Consumer Protection Act; that Aurora fraudulently induced Geary into defaulting on her obligations under the note; and that Quality's execution of the corrective deed of trust sale was a "fraudulent attempt to avoid payment of [excise] taxes." CP (No. 43712-1) at 11. ING, Aurora, and Quality each answered Geary's claims and sought an award of reasonable attorney fees and costs.

Geary moved for partial summary judgment, requesting a declaration that ING, Aurora, and Quality "have no interest in the property" and an order quieting title in Geary. CP (No. 43712-1) at 62. On cross-motions for summary judgment, ING, Aurora, and Quality sought the dismissal of all Geary's claims.

5

In July 2012, the trial court denied Geary's motion and granted the defendants' motions. Accordingly, the trial court dismissed each of Geary's claims against ING, Aurora, and Quality.[6]

Geary appeals.

C.    *ING's Unlawful Detainer Action*

In March 2011, ING sent Geary a notice to vacate the property. The following month, ING commenced an unlawful detainer action to obtain a writ of restitution and to evict Geary. In her answer, Geary alleged, inter alia, that she remained the owner of the property "because of the defects in the foreclosure process and the misconduct of the successive lien holders." CP (No. 44619-7) at 28.

In February 2013, after the trial court dismissed Geary's suit, ING moved for summary judgment on its unlawful detainer claim arguing that ING was entitled to immediate possession of the property. In its motion, ING argued that dismissal of Geary's suit precluded her from relitigating the issue of whether she remained the owner of the property. The trial court granted ING's motion and issued the writ of restitution.

Geary appeals.

---

[6] In so doing, the trial court made findings on certain factual issues "pursuant to CR 56(d)." CP (No. 43712-1) at 1243-46, 1249-51.

D.    *Consolidation of Geary's Appeals*

Geary moved to consolidate her two appeals. Our court's commissioner granted Geary's

motion and also accepted ING's recommendation to accelerate perfection of Geary's unlawful

detainer appeal.[7]

## ANALYSIS

In the first action, Geary assigns error to the trial court's orders denying her motion for

partial summary judgment and granting the defendants' cross-motions for summary judgment

dismissing her claims.[8] Geary argues that the trial court erred by dismissing her claims for (1)

quiet title, (2) Deed of Trust Act violations, (3) fraud in the inducement, (4) Consumer Protection

Act violations, and (5) fraudulent evasion of the excise tax.[9] Geary further claims that the trial

---

[7] Aurora and Quality are not parties to the unlawful detainer appeal.

[8] Citing RAP 10.3(a)(4), Aurora and Quality each claim that Geary waived all challenges to the order of summary judgment in their favor because Geary's assignments of error fail to precisely identify the portions of the trial court's order that form the basis of her appeal. We disagree. RAP 10.3(a)(4) requires an appellant's brief to include assignments of error, together with a statement of the relevant issues. A failure to comply with this requirement does not amount to a waiver, so long as the nature of the appeal is clear from the body of the briefs and no party has been prejudiced. *State v. Turner*, 156 Wn. App. 707, 711, 235 P.3d 806 (2010). Therefore Geary has not waived all challenges to the trial court's order granting summary judgment to Aurora and Quality.

[9] ING's response brief states that it is submitted by "Capital One, N.A. as successor by merger to ING Bank, fsb." Br. of Resp't (ING) at 1. In her reply, Geary "objects to any facts or argument from Capit[a]l One" because it is not a party of record in this case. Reply Br. Appellant at 3. But Geary does not cite any authority in support of its implicit contention that a successor in interest cannot litigate in this court, and we do not consider her objection. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Moreover, to the extent that Geary moves in her reply brief to strike ING's brief, we deny the motion because it would not preclude hearing this case on the merits. *See* RAP 17.4(d); *State v. Saas*, 118 Wn.2d 37, 46 n.2, 820 P.2d 505 (1991).

court erred in the second action by (6) granting summary judgment in favor of ING on its

unlawful detainer claim. We disagree.

We review a trial court's decision on a motion for summary judgment de novo, engaging

in the same inquiry as the trial court. *Schmitt v. Langenour*, 162 Wn. App. 397, 404, 256 P.3d

1235 (2011). Summary judgment is appropriate when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one

affecting the outcome of the litigation. *Owen v. Burlington N. & Santa Fe R.R.*, 153 Wn.2d 780,

789, 108 P.3d 1220 (2005).

To determine whether a genuine issue exists, the court must consider the record and all

reasonable inferences in the light most favorable to the nonmoving party. *Clements v. Travelers

Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). There is no genuine issue when

reasonable minds could reach but one conclusion. *See Swanson v. Liquid Air Corp.*, 118 Wn.2d

512, 518, 826 P.2d 664 (1992). Further, a naked assertion that factual issues remain unresolved

is insufficient to defeat a motion for summary judgment. *Jacobsen v. State*, 89 Wn.2d 104, 111-

12, 569 P.2d 1152 (1977).

## I. QUIET TITLE

Citing no authority, Geary first argues that "the trial court should have granted summary

judgment [on her quiet title claim] against Quality and Aurora" because Quality and Aurora did

not assert an interest in the property.[10] Br. of Appellant at 10 (emphasis omitted). We refuse to

consider this argument because it is unsupported by citation to authority or meaningful analysis.

---

[10] Geary acknowledges that ING asserts an interest in the property.

*Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (briefing is insufficient to merit consideration of an issue when it lacks citations to the record or authority).

## II. DEED OF TRUST ACT CLAIMS

Next, Geary appears to argue that the trial court erred by dismissing her Deed of Trust Act claims because procedural irregularities rendered the trustee's sale to ING void. Specifically, Geary identifies the irregularities as (1) an invalid chain of assignments of the beneficial interest in the deed of trust, (2) a failure to record powers of attorney, (3) Quality's issuance of a notice of default bearing no signatures before Quality's appointment as trustee, (4) the failure of the trustee's deed of sale to reference the continuances of the trustee's sale, and (5) the recording of the corrective trustee's deed of sale. As a threshold matter, ING and Aurora argue that Geary waived these arguments by failing to seek an injunction restraining the trustee's sale. We agree that Geary waived any challenge based on the first (invalid chain of assignments) and third (no signature on the notice of default) alleged irregularities. Further, we hold that the remaining alleged irregularities did not render the trustee's sale void.

The Deed of Trust Act creates a method of mortgaging real property involving three parties: a grantor (borrower), a beneficiary (lender), and a trustee. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012); *see* RCW 61.24.005. Upon execution of a deed of trust, the trustee holds title in trust for the beneficiary as security for the grantor's debt. *Bain*, 175 Wn.2d at 92-93. Where, as here, the deed of trust authorizes the trustee to conduct a foreclosure sale if the grantor defaults, the trustee may generally do so without judicial supervision. *Bain*, 175 Wn.2d at 93; *see* RCW 61.24.020. But a failure to comply with statutory

9

requisites can invalidate a trustee's sale. *Cox v. Helenius*, 103 Wn.2d 383, 388, 693 P.2d 683 (1985).

Given the relative ease with which beneficiaries can forfeit grantors' interests in a non-judicial foreclosure, we construe the Deed of Trust Act in favor of grantors. *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007). The Deed of Trust Act is also construed to promote its three objectives: (1) providing for an efficient and inexpensive non-judicial foreclosure process, (2) affording an adequate opportunity for grantors to prevent wrongful foreclosures, and (3) promoting the stability of land titles. *Cox*, 103 Wn.2d at 387.

A.    *Waiver*

Aurora and ING argue that Geary waived her allegations of procedural irregularity by failing to seek an injunction restraining the trustee's sale. We hold that Geary waived two claims because she could have brought them before the trustee's sale occurred.

As an initial matter, Geary relies on *Bain*, 175 Wn.2d 83, to assert that the trustee's sale was void ab initio because MERS cannot be the lawful beneficiary of a deed of trust and, thus, Geary was not required to enjoin the trustee's sale. But this assertion misapprehends *Bain*. *Bain* involved a novel arrangement in which the deed of trust named MERS as the "beneficiary" while naming another party the "lender." 175 Wn.2d at 89. Our Supreme Court held that this novel arrangement violated the Deed of Trust Act, which defines the "beneficiary" as the party holding the promissory note secured by the deed of trust. 175 Wn.2d at 98-99. In contrast to *Bain*'s novel arrangement, the deed of trust here complied with the statute because the beneficiary and lender were identical. Geary's assertion fails and we now turn to Aurora and ING's waiver arguments.

10

Waiver of challenges to a trustee's sale flows from the equitable principle that a party relinquishes rights by failing to exercise them. *Albice v. Premier Mortg. Serv.*, 174 Wn.2d 560, 569, 276 P.3d 1277 (2012). Waiver applies only if it is equitable under the circumstances and serves the Deed of Trust Act's objectives. *Albice*, 174 Wn.2d at 570. A grantor waives the right to challenge a trustee's sale where (1) the grantor received notice of his right to restrain the trustee's sale, (2) the grantor had actual or constructive knowledge of the grounds for the challenge before the trustee's sale occurred, and (3) the grantor failed to seek an injunction restraining the trustee's sale. *Plein v. Lackey*, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003).

Here, the record clearly shows that the notice of default and notice of trustee's sale each gave Geary notice of her right to restrain the sale. Likewise, Geary never sought an injunction restraining the trustee's sale. Thus, the only issue is whether Geary had actual or constructive knowledge of the grounds for each challenge before the trustee's sale occurred. *See Plein*, 149 Wn.2d at 227.

In this case, Geary alleges five grounds for invalidating the trustee's sale. Geary had knowledge of two of these five grounds before the trustee's sale occurred.

First, Geary alleges that Aurora and ING lacked valid beneficial interests in the deed of trust because their predecessor-in-interest, MERS, cannot be the beneficiary of a deed of trust. But the notice of default sent to Geary identified MERS as the beneficiary. Thus Geary had actual or constructive knowledge of the grounds for this challenge *before* the trustee's sale occurred.

Second, Geary challenges the issuance of the notice of default because (1) it was not signed and (2) it was issued by Quality prior to Quality's appointment as trustee. Again, Geary

11

received the notice of default before the trustee's sale occurred. She had actual or constructive knowledge of the grounds for this challenge.

We hold that Geary waived these two challenges. Geary did not waive her remaining challenges because they are not based on grounds known to Geary prior to the trustee's sale.

B.    *Alleged Procedural Irregularities*

Geary's remaining arguments are that the trustee's sale was invalid due to three procedural irregularities: (1) a failure to record powers of attorney, (2) the failure of the trustee's deed of sale to reference the continuances of the trustee's sale, and (3) the recording of the corrective trustee's deed of sale. None of Geary's alleged procedural irregularities invalidates the trustee's sale.

1. *Failure To Record Appointment of Attorney-in-Fact*

Geary first argues that the trustee's sale was invalid because MERS failed to record the appointment of its attorney-in-fact. Geary asserts that this failure violates RCW 64.04.010 and .020, but this assertion is unfounded.[11]

RCW 64.04.010 requires every conveyance of real estate to be by deed. RCW 64.04.020 requires every deed to be in writing, signed, and acknowledged. These statutes do not mention the appointment of an attorney-in-fact or require it to be in writing. This claim fails.

---

[11] Citing *Shoals v. Home Depot, Inc.*, 422 F. Supp. 2d 1183 (E.D. Cal. 2006), Geary also claims that this failure violated the rule of equal dignities. This claim lacks merit. The rule of equal dignities derives from a California statute. *Shoals*, 422 F. Supp. 2d at 1190. Geary fails to cite, and we cannot find, any authority suggesting that the rule of equal dignities is a feature of Washington law.

12

2. *No Mention of Continuances in Trustee's Deed of Sale*

Geary next argues that the trustee's deed of sale to Aurora was invalid because it fails to mention that the trustee's sale was continued four times. But Geary cites no provision in the Deed of Trust Act requiring a deed of sale to mention continuances, and we cannot find such a requirement. *See* RCW 61.24.040(6) (authorizing the trustee to continue a trustee's sale). This argument fails.

3. *Issuance of Corrective Trustee's Deed of Sale*

Lastly, Geary argues that the corrective trustee's deed of sale to ING was invalid, asserting that it altered the final sale of the property to Aurora and perpetrated an obvious fraud. This argument fails for a lack of evidentiary support.

When a trustee's sale takes place, RCW 61.24.040(4) requires the trustee to "sell the property at public auction to the highest bidder." Here, after the trustee's sale, Aurora directed Quality to take title in ING's name. But Quality initially recorded a trustee's deed upon sale that named Aurora as the grantee of the property. Five months later, in May 2010, Quality recorded a corrective trustee's deed upon sale that conveyed the property to ING instead of Aurora.

Contrary to Geary's claim that Aurora bought the property at the trustee's sale, nothing in the record suggests that Aurora even placed a bid. Similarly, there is no evidentiary support for Geary's claims that the corrective deed of sale was an obvious fraud "designed [to] deceive Geary into believing that the sale was legitimate and to avoid paying transfer taxes [to Pierce County]." Br. of Appellant at 19. Geary's naked assertions are insufficient to defeat a motion for summary judgment. *See Jacobsen*, 89 Wn.2d at 111.

13

The only reasonable inferences to be drawn from the record are that (1) Quality erroneously designated Aurora as the beneficiary in the initial trustee's deed upon sale and (2) Quality corrected this error by recording the corrective trustee's deed of sale. The trial court properly dismissed Geary's Deed of Trust Act claims on summary judgment.

### III. FRAUD IN THE INDUCEMENT

Geary next argues that the trial court erroneously dismissed her claim that Aurora fraudulently induced Geary to default on the note in the hopes of obtaining a loan modification. Geary argues that summary judgment was inappropriate in light of genuine issues of material fact.[12] We disagree.

A fraud claim has nine essential elements, each of which must be established by clear, cogent, and convincing proof:

> (1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

---

[12] Geary also argues the trial court inappropriately found facts related to her fraud in the inducement claim. The trial court's order repeatedly states that it made findings on certain factual issues "pursuant to CR 56(d)." CP (No. 43712-1) at 1243-46, 1249-51. CR 56(d) provides that, when a court's decision on a motion for summary judgment *does not* render judgment upon the whole case, the court "shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." But CR 56(d) does not apply here because the trial court's decision dismissed the whole case. Although the trial court's order can be understood as identifying the material factual issues that in its view were not genuinely disputed, we do not consider the trial court's findings because our review is de novo and findings are superfluous if entered on summary judgment. *Duckworth v. City of Bonney Lake*, 91 Wn.2d 19, 21-22, 586 P.2d 860 (1978). Likewise, we reject Quality's assertion that Geary failed to assign error to the trial court's findings of fact under RAP 10.3(g).

*Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 920, 425 P.2d 891 (1967) (quoting *Webster v. L. Romano Eng'g Corp.*, 178 Wash. 118, 120-21, 34 P.2d 428 (1934)). Thus summary judgment of dismissal is appropriate if, viewing all the evidence in the light most favorable to the plaintiff, the plaintiff could not establish his fraud claim by clear, cogent, and convincing proof. *See Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996) (considering the standard on a motion for judgment as a matter of law).

Aurora argues that the fraud claim must be dismissed because Geary cannot establish that (1) Geary had a right to rely on Aurora's alleged misrepresentation and (2) Geary suffered consequent damage. We agree with Aurora's first argument and do not reach the second.

Assuming arguendo that Aurora's representative made a false representation by orally advising Geary to stop paying in order to become eligible for a loan modification, Aurora argues that Geary had no right to rely on it. We agree.

Whether a person had a right to rely on alleged fraudulent misrepresentations "involves the question of his diligence in ascertaining the facts for himself" and "his exercise of care and judgment in acting upon representations which run counter to knowledge within his possession or reach." *Rummer v. Throop*, 38 Wn.2d 624, 633, 231 P.2d 313 (1951). A borrower has no right to rely on oral statements that contradict the written terms of a loan. *Cornerstone Equip. Leasing, Inc. v. MacLeod*, 159 Wn. App. 899, 906, 247 P.3d 790 (2011).

Aurora bases its claim on provisions of the deed of trust and the note. The deed of trust included a clause stating:

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING**

**REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

CP (No. 43712-1) at 94. This clause appears on the same page of the deed of trust as Geary's signature. In addition, a section of the note entitled "Borrower's Failure to Pay as Required" states in part:

> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default[.]
>
> . . . .
>
> Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time[.]

CP (No. 43712-1) at 120.

In addition, Aurora sent Geary three separate letters in December 2008 denying her requests to modify her loan. Nonetheless, Geary ceased her loan payments in December 2008 based on Aurora's alleged oral advice, and she defaulted on the loan in March 2009.

Given the written provisions of the deed of trust and note and the three written denial letters, Geary had no right to rely on oral advice that her loan obligations would be modified if she defaulted on the note. *See Cornerstone*, 159 Wn. App. at 906. Thus, the dismissal of Geary's fraud claim was appropriate.[13]

## IV. CONSUMER PROTECTION ACT

Geary further argues that the trial court erred by dismissing her claim of Consumer Protection Act violations, given Aurora's alleged misrepresentation—namely, its statement that

---

[13] Because Geary had no right to rely on Aurora's representations, she cannot establish all nine elements of fraud, and we do not consider fraud's damage element.

Geary would become eligible for a loan modification if she defaulted and its subsequent rejection of her loan modification request. We disagree.

In a Consumer Protection Act claim, the plaintiff must establish that (1) the defendant engaged in an unfair or deceptive act or practice, (2) the act or practice occurred in trade or commerce, (3) the act or practice impacted the public interest, (4) the plaintiff suffered an injury, and (5) the defendant's act or practice caused the plaintiff's injury. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013). Here summary judgment was appropriate because nothing in the record shows that Aurora's alleged misrepresentation to Geary impacted the public interest.

An act that injures other persons or has the capacity to do so impacts the public interest. RCW 19.86.093(3). Whether an act or practice impacted the public interest is a question of fact. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 789-90, 719 P.2d 531 (1986). Ordinarily, a dispute among the parties to a private contract does not affect the public interest. *Hangman Ridge*, 105 Wn.2d at 790.

Geary fails to identify anything in the record that could support a reasonable inference that Aurora's alleged misrepresentation to her impacted the public interest. Accordingly, her Consumer Protection Act claim fails.

## V. FRAUDULENT EVASION OF THE EXCISE TAX

Geary argues that Aurora and ING are barred from obtaining any relief in court—apparently including dismissal of Geary's claims against them—because they engaged in fraudulent evasion of the excise tax. We disagree.

The lone authority Geary cites to support her argument is *J.L. Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 113 P.2d 845 (1941). But this case is inapposite. *J.L. Cooper* considered the equitable doctrine of unclean hands, which bars equitable relief to a party who has engaged in inequitable conduct in the controversy before the court. 9 Wn.2d at 71-73. But in this case, none of the defendants has sought equitable relief. Therefore the doctrine of unclean hands does not bar dismissal of Geary's claims against Aurora and ING. Geary's argument fails.

## VI. UNLAWFUL DETAINER

Arguing that the trial court erred by granting summary judgment to ING in the unlawful detainer action, Geary claims that (1) ING is not qualified to do business in Washington and (2) ING lacks any right to possess the property. We disagree.

### A. ING's Qualification To Do Business in Washington

Geary first claims that summary judgment was inappropriate because ING produced no proof that it was qualified to do business in Washington as a foreign nonprofit corporation under RCW 24.03.390. ING responds that Geary waived this argument by failing to raise it in opposition to ING's motion for summary judgment. We agree with ING.

Under RAP 9.12, our review of an order granting summary judgment is confined to the evidence and issues called to the attention of the trial court. *Mariners Cove Beach Club, Inc. v. Kairez*, 93 Wn. App. 886, 889, 970 P.2d 825 (1999). Although Geary's answer denied that ING was "authorized to do business in this State," CP (No. 44619-7) at 28, Geary failed to develop this denial into the claim she now advances on appeal. Further, the trial record consistently refers to ING as a federal savings bank, not a nonprofit corporation subject to RCW 24.03.390. Because Geary failed to call the trial court's attention to this issue, we do not consider it.

18

B.     *ING's Right To Possess the Property*

Next, Geary argues that the trial court erred by awarding summary judgment to ING in the unlawful detainer action because ING did not establish its right to possess the property.[14] We disagree.

An unlawful detainer action is a summary proceeding brought to determine who has the right to possess a property and to resolve related issues. *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). In an unlawful detainer action, the plaintiff bears the burden to prove a right to possession. *Duprey v. Donahoe*, 52 Wn.2d 129, 135, 323 P.2d 903 (1958).

Geary appears to argue that ING failed to establish its right to possess the property because "ING provided no evidence of consideration for the purchase." Supp. Br. of Appellant at 4. This argument lacks merit. ING attached the corrective trustee's deed of sale to its complaint. The corrective trustee's deed of sale states that ING paid "$668,991.68, in lawful money of the United States" to acquire the property.[15] CP (No. 44619-7) at 23. Therefore Geary's argument fails.

---

[14] Geary also advances some of the same arguments made in her appeal from the trial court's order dismissing her claims against ING, Aurora, and Quality. Specifically, Geary asserts that the corrective trustee's deed of sale was invalid because (1) MERS was an unlawful beneficiary, (2) Quality was an illegal trustee, and (3) the property was actually sold to Aurora pursuant to the initial trustee's deed of sale. We addressed these arguments above and do not consider them again here.

[15] The amount ING paid matched the amount of Geary's unpaid debt on the property.

ATTORNEY FEES ON APPEAL

Under the terms of the deed of trust, ING and Aurora each request an award of reasonable attorney fees on appeal.[16] We grant ING's request but deny Aurora's.[17]

The deed of trust contained an attorney fee provision stating:

> Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorney's fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

CP (No. 43712-1) at 94. The deed of trust named Pierce as "Lender" and further stated, "Lender is the beneficiary under this [deed of trust]." CP (No. 43712-1) at 81. But the deed of trust also provided that "The Note or a partial interest in the Note (together with this [deed of trust]) can be sold one or more times without prior notice to [Geary]." CP (No. 43712-1) at 92.

Through a chain of assignments, ING acquired the beneficial interest in the deed of trust, which had belonged originally to Pierce. An assignee "stands in the shoes of his assignor." *Paullus v. Fowler*, 59 Wn.2d 204, 212, 367 P.2d 130 (1961). Therefore ING is entitled to recover reasonable attorney fees and costs on appeal as the beneficiary. *See Metro. Mortg. & Sec. Co. v. Becker*, 64 Wn. App. 626, 628, 634, 825 P.2d 360 (1992) (permitting the assignee of a deed of trust and note to recover attorney fees under the note).

In contrast, Aurora is a *former* beneficiary of the deed of trust, having assigned its beneficial interest to ING before this litigation began. Aurora does not assert that it retained any

---

[16] Geary does not address the requests for attorney fees on appeal.

[17] ING additionally bases its request on the terms of the note. Because we hold that ING is entitled to recover reasonable attorney fees under the deed of trust, we need not consider this additional basis.

interest in the deed of trust after the assignment, and it fails to acknowledge that its position would allow multiple parties to recover attorney fee awards based on a single beneficial interest. Further, Geary's claims against Aurora—fraud in the inducement and Consumer Protection Act violations—were premised on Aurora's actions *as the loan servicer*, not as a former beneficiary. We deny Aurora's request for an award of reasonable attorney fees on appeal.

We affirm the trial court's orders dismissing all of Geary's claims and entering summary judgment in favor of ING in the unlawful detainer action. We further award reasonable attorney fees on appeal to ING. The commissioner of our court will make an appropriate award upon proper application. RAP 18.1(f).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

21